FOREMOST INSURANCE COMPANY v. JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE FOR THE STATE OF NORTH CAROLINA (IN THE MATTER OF ESTABLISHING APPROPRIATE INSURANCE PREMIUM DISCOUNTS FOR ADEQUATE MOBILE HOME TIE-DOWNS; ORDER OF THE COMMISSIONER ENTERED OCTOBER 31, 1975)

No. 16

(Filed 7 March 1977)

1. Insurance § 116— mobile home insurance — tie-down discount — statutory requirement

Pursuant to G.S. 58-131.3A which "directed and authorized" the Commissioner of Insurance to implement not less than a 10% discount on mobile home insurance premiums for proper mobile home tie-down, the Commissioner was not given the authority to fix a rate which would yield a fair and reasonable profit under G.S. 58-131.2 but was instead expressly directed by the legislature to decrease the premium by 10%.

2. Insurance § 116— mobile home insurance — tie-down discount — sufficiency of evidence — no finding of facts required

Evidence offered by petitioner was not such as would compel the allowance of a premium change for mobile home insurance in an amount other than the 10% decrease mandated by G.S. 58-131.3A, since (1) the loss experience data of petitioner which it offered into evidence did not establish the "composite" of loss experience of all carriers in the State, which the establishment of the N. C. Fire Insurance Rating Bureau was intended to create, and (2) the Commissioner was required to reduce the premiums by 10% and was not required to support his findings with substantial evidence.

3. Insurance § 116— mobile home insurance — tie-down discount — applicability to windstorm portion of premium

Petitioner's contention that a 10% reduction in mobile home insurance premiums for proper mobile home tie-downs should have applied only to that portion of the premiums applicable to wind loss perils is without merit, since G.S. 58-131.3A indicates that the discount should be from the total premium; and there is no experience data available regarding the savings to be realized because of the tie-downs.

4. Constitutional Law § 12— mobile home insurance — tie-down discount — statute within legislature's police power

G.S. 58-131.3A, providing for a 10% discount on mobile home insurance premiums for proper mobile home tie-downs, bears a reasonable relation to the protection of the health, safety and general welfare of the public and is a valid exercise of the police power, since the statute serves as an inducement to mobile homeowners to tie down their homes; such tie-downs will reduce the number of homes overturned by the wind, thus reducing the loss of life, number of personal injuries, and damage to property; and this reduction in losses will be beneficial to both the citizens of N. C. and their insurance carriers.

APPEAL as of right by John Randolph Ingram, Commissioner of Insurance for the State of North Carolina, pursuant to G.S. 7A-30(2), to review the decision of the Court of Appeals, reported in 30 N.C. App. 741, 228 S.E. 2d 656, which reversed the judgment entered by *Hall, J.,* on 11 February 1976 in WAKE Superior Court and vacated the order entered by the Commissioner on 31 October 1975.

The facts and proceedings necessary to decision are fully set out in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General James Wallace Jr., for Commissioner of Insurance, appellant.*

*Bode & Bode by John T. Bode and Robert V. Bode for plaintiff appellee.*

MOORE, Justice.

The primary question for review in present case is the interpretation to be placed upon G.S. 58-131.3A [1975 Sess. Laws, c. 670, s. 1] which provides:

> *"Premium discount for proper mobile home tie-down.—* The Commissioner is authorized and directed to implement not less than a ten-percent (10%) discount from the insurance premium otherwise applicable to be allowed in diminution of the premium charged insureds under mobile-home owner policies and mobile-homeowner's policies where the mobile home covered by the policy has been properly secured in accordance with regulations of the North Carolina State Building Code Council as approved by the Commissioner or any other standard which is approved by the Commissioner and which affords no less protection from windstorm damage than the aforesaid regulations."

Petitioner, Foremost Insurance Company (Foremost) a company writing insurance upon mobile homes in this State, contends that G.S. 58-131.3A should be interpreted to require that the Commissioner of Insurance base any rate decrease upon "substantial evidence"; or, in the alternative, that the statute should be interpreted to permit a premium discount only for that portion of the total premium which is related to losses due to wind.

This Court in recent years has passed upon a number of cases relating to the action of the Commissioner of Insurance upon filings by the North Carolina Fire Insurance Rating Bureau and the Automobile Rate Office. For a thorough discussion of the respective rights and duties of the Commissioner of Insurance, the Automobile Rate Office and the Fire Insurance Rating Bureau, *see Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 231 S.E. 2d 882 (1977) ; *Comr. of Insurance v. Automobile Rate Office*, 292 N.C. 1, 231 S.E. 2d 867 (1977) ; *Comr. of Insurance v. Automobile Rate Office*, 287 N.C. 192, 214 S.E. 2d 98 (1975) ; *In re Filing by Automobile Rate Office*, 278 N.C. 302, 180 S.E. 2d 155 (1971).

Pursuant to G.S. 58-126 and G.S. 58-126.1, the North Carolina Fire Insurance Rating Bureau (Bureau) is vested with the authority to promulgate rates for the mobile home policies which are the subjects of the case at bar. The duties of the Bureau are defined in Article 13, Chapter 58, of the North Carolina General Statutes (G.S. 58-125 to -131.9). Under these statutes and for rate-making purposes, the Bureau is treated as if it were the only insurance company writing policies upon the risks over which it has jurisdiction. The Bureau is regarded as having an earned premium experience, an incurred loss experience and an operating expense experience equivalent to the composite of all those companies over which it has jurisdiction. This is proper since all companies writing policies covering the risks over which the Bureau has jurisdiction are members of the Bureau. *See* G.S. 58-127. *See also In re Filing by Fire Ins. Rating Bureau*, 275 N.C. 15, 165 S.E. 2d 207 (1969), for a succinct analysis of the duties and functions of the Bureau. With this background, we proceed to discuss the course taken by the Commissioner of Insurance in present case.

On 12 August 1975, the Commissioner of Insurance (Commissioner) issued a notice of public hearing, pursuant to G.S. 58-131.2, which set a hearing date of 16 September 1975 " . . . for the purpose of establishing appropriate insurance premium discounts for adequate mobile home tie-downs, pursuant to Chapter 670 of the 1975 session laws of North Carolina [G.S. 58-131.3A]." Thereafter, on 10 September 1975, the Bureau filed with the Commissioner certain revisions which permitted reductions in the premiums charged under the Mobile-Homeowners Policy MH(F) Program, the Mobile Home Owner Policy MH(C) Program, and the Special Mobile Home Policy—1966.

---

Insurance Co. v. Ingram, Comr. of Insurance

---

These revisions stated that with respect to each policy an amount equal to ten percent of the applicable basic premium would be deducted from the basic premium for insurance coverage on those mobile homes which were properly secured in accordance with the regulations of the North Carolina Building Code Council, as set forth in the State of North Carolina Regulations for Mobile Homes. Each revision submitted by the Bureau set forth the proposed endorsement to be attached to each policy, and stated:

> "At present creditable experience is not available to substantiate any credit for tie-downs under this program. Furthermore, it should be noted that the proposed credit of 10% is to be applied to the applicable basic premiums for coverages which encompass many exposures other than wind. Therefore, we strongly feel that the proposed credit is fully adequate under present circumstances."

On 16 September 1975, a joint hearing was held on the Commissioner's notice and the Bureau's filings made subsequent to the Commissioner's notice. At the hearing, evidence was presented by the Commissioner, the Bureau and Foremost. The Commissioner's evidence related solely to the regulations applicable to properly tying down a mobile home in North Carolina.

The Bureau offered evidence that the premium charged for mobile homeowners' coverage was an indivisible premium for all perils, including fire, theft, riot and other perils, in addition to wind; and that the perils were not individually rated. Therefore, the Bureau felt that the ten percent discount should be computed from the entire premium charged for mobile home coverage and no segregation of premiums according to peril would be proper. The Bureau further stated that any reduction in the premium in excess of ten percent would require experience data which the Bureau did not possess at that time.

Foremost introduced evidence of its losses incurred in writing mobile home policies. The information regarding losses was segregated as to those amounts applicable to wind-loss claims and those amounts applicable to claims arising from other perils. Through expert testimony, Foremost estimated the amounts of losses which would be saved because of an increased number of tied-down mobile homes. From these estimates, Foremost concluded that the expected reduction in wind-related

losses would support a five dollar decrease in the total premium charged for mobile home coverage.

On the above evidence, the Commissioner made, *inter alia,* the following findings in an order dated 31 October 1975:

"6. That no credible statistics were introduced for all companies writing mobile home coverages that would demonstrate that the credits allowed in the North Carolina Fire Insurance Rating Bureau filings were unwarranted, unreasonable, improper or unfairly discriminatory.

\*          \*          \*

"8. That the premium or rate charged for the peril of wind damage is indivisible, in that the peril is included with other perils in these policies and the premium or rate for wind storm cannot be separately obtained."

The Commissioner's order concluded that the discount to be allowed for tied-down mobile homes should be ten percent of the entire premium paid for mobile home insurance and that the reduction would go into effect on 1 November 1975.

In fixing premium rates in those cases arising from filings by the Bureau, the Commissioner is bound to follow the mandate of G.S. 58-131.2 in fixing a rate which produces "a fair and reasonable profit." In pertinent part, G.S. 58-131.2 provides that the Commissioner shall "give consideration to all reasonable and related factors, to the conflagration and catastrophe hazard, both within and without the State, to the past and prospective loss experience, including the loss trend at the time the investigation is being made. . . . " Further, the Commissioner's order must be based upon material and substantial evidence in view of the entire record as submitted. G.S. 58-9.6(b) (5).

[1] The authority of the Commissioner is, however, created by the legislature and the Commissioner's actions must be in accordance with the statutory procedures and standards set by the legislature. *In re Filing by Fire Ins. Bureau, supra.* The directions to the Commissioner contained in the statutes are mandatory and must be followed. Accordingly, we feel that in the case at bar the Commissioner was "authorized *and directed* to implement not less than a ten percent (10%) discount from the insurance premium. . . . " (Emphasis added.) G.S. 58-131.3A. The Commissioner was not given the authority to fix a rate which would yield a fair and reasonable profit under G.S.

58-131.2. Rather, he was expressly directed by the legislature to decrease the premium by ten percent.

[2]   The evidence offered by Foremost does not alter our conclusion that the Commissioner was required to reduce premiums by ten percent. At the hearing, Foremost introduced data concerning its losses attributable to each peril covered under its mobile home policies. This included a detailed analysis of its losses occasioned by the peril of wind and an estimate of the decrease in losses expected to result from an increased number of mobile homes tied down. From this data, Foremost concluded that the decreased losses resulting from the tie-downs would be less than ten percent. We are of the opinion that Foremost's evidence was competent to be considered by the Commissioner under G.S. 58-131.2. The evidence, however, was not such as would compel the allowance of a premium change in an amount other than the ten percent decrease mandated by G.S. 58-131.3A. This is true for two reasons. First, the loss experience data of a single carrier in this State does not establish the "composite" of loss experience of all the carriers, which the establishment of the Bureau was intended to create. Secondly, as we interpret the statute, the Commissioner was required to reduce the premiums by ten percent and was not required to support his findings with substantial evidence. In our opinion, G.S. 58-131.3A mandated a ten percent decrease in the premiums charged for mobile home coverage; any greater decrease would require a finding, based upon substantial and material evidence, that such a further decrease was justified. Thus, we overrule Foremost's assignments of error directed to the lack of evidence supporting the Commissioner's order.

[3]   In the alternative, Foremost argues that the ten percent premium reduction should have applied only to that portion of the premium applicable to wind-loss perils. The statute states that there is to be a "ten percent (10%) discount from the insurance premium otherwise applicable. . . . " In interpreting a statute, it is a general rule of construction that a statute is to be interpreted according to the intent of the legislature as gleaned from the language of the statute, the spirit of the statute and the purposes to be accomplished by the statute. See *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972).

In instant case, we feel that the language of the statute indicates that the discount was to be from the total premium.

From the Bureau's testimony, it was shown that mobile home coverage premiums had never been divided into components representing each peril and that such premiums were not susceptible to being so divided. Further, there was no loss experience data available regarding the. savings which would be realized by the carriers because of the tie-downs. To accept Foremost's argument would require the use of data which does not exist and which the Bureau did not possess. This interpretation would perhaps totally prevent implementation of the ten percent reduction and clearly defeat the intent of the legislature to encourage mobile home owners to tie down their homes. Our interpretation of the statute clearly effectuates this intent. Accordingly, we overrule Foremost's assignments directed to its contention that the ten percent reduction applied only to that portion of the premium applicable to wind-loss perils.

[4] We are of the opinion that G.S. 58-131.3A was within the police power of the legislature. The legislation was passed as an inducement to mobile homeowners to tie down their homes. Such tie-downs will reduce the number of homes overturned by the wind, thus reducing the loss of life, the number of personal injuries, and the damage to property. This reduction in losses will be beneficial to both the citizens of North Carolina and their insurance carriers. The statute clearly bears a reasonable relation to the protection of the health, safety and general welfare of the public and is a valid exercise of the police power. *See Indemnity Co. v. Ingram, Comr. of Insurance,* 290 N.C. 457, 226 S.E. 2d 498 (1976); *State v. Anderson,* 275 N.C. 168, 166 S.E. 2d 49 (1969); *R. R. Co. v. City of Winston-Salem,* 275 N.C. 465, 168 S.E. 2d 396 (1969); *Graham v. Insurance Co.,* 274 N.C. 115, 161 S.E. 2d 485 (1968).

For the reasons stated, the decision of the Court of Appeals is reversed. The case is remanded to that court with direction that it remand the case to the Superior Court of Wake County for entry of judgment affirming the order of the Commissioner of Insurance entered in this case on the 31st day of October 1975.

Reversed.