384 A.2d 308.

ROBERT F. LIGUORI *et al. vs.* THE AETNA CASUALTY
AND SURETY CO.

MARCH 30, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

876

KELLEHER, J.  We have issued a writ of certiorari pursuant to the pertinent provisions of the Administrative Procedures Act, to wit, G.L. 1956 (1977 Reenactment) §42-35-16 in order that we might review a judgment entered in the Superior Court reversing a decision and order issued by the Director of Business Regulation.[1] The director,

---

[1]When the controversy was at the administrative level, Albert B. West was the Director of the Department of Business Regulation. Mr. West was a named defendant in the Superior Court action. The petition for certiorari was brought by Mr. West's successor, Robert F. Liguori.

who is also the State's Insurance Commissioner, had ruled that Aetna Casualty and Surety Co. (Aetna) unlawfully cancelled the automobile liability coverage of the petitioner, Thomas F. Keough, Jr., and ordered Aetna to reinstate his insurance coverage.

There is no dispute as to the facts. On February 23, 1973, Keough purchased an automobile insurance policy from Aetna. He had to finance a part of the premium due on the policy, and to obtain the needed funds, he went to Valley Premium Plan (Valley), a private financing institution. Keough signed a promissory note with Valley in which he agreed to pay Valley the financed balance of the premium ($201) plus interest in ten successive monthly installments beginning on March 23, 1973. The note also provided that should Keough default on any monthly installment, the unpaid balance would become payable immediately. A clause in the note stated:

> "Such default * * * shall constitute an election by the insured to cancel said policy * * * and the insured agrees, in such event, promptly to return the described policy * * * to the payee named herein [Valley].
> "* * *
>
> "The insured hereby appoints the payee herein * * * the insured's attorney-in-fact to effectuate the foregoing in the name of the insured."

Attached to Keough's policy was a "Financed Premium Endorsement." This was an agreement between Aetna and Valley in which Aetna agreed to abide by a request by Valley for cancellation of the policy made in accordance with the power of attorney granted to it by Keough. The endorsement provided that, upon a proper request by Valley, the company would then terminate the policy in the manner prescribed by it. The policy stipulated that the insured could cancel the policy at any time by "mailing to the company written notice" stating when the policy should cease to be effective.

On July 11, 1973, Valley wrote to Keough, informing him that he was in default on the note as of June 23, 1973, and reminded him of the terms of the promissory note which equate a default with an election by the insured to cancel the policy. Valley said that it would exercise its power of attorney and direct Aetna to terminate coverage as of 12:01 a.m. on July 14, 1973. Valley also wrote to Aetna on July 11 and ordered the cancellation of Keough's policy. In its letter Valley stated that its action was being taken "[u]nder the terms of our finance agreement and Regulation 16 of the R.I. Dept. of Business Regulations * * * ."

As his luck would have it, Keough was involved in an automobile collision on July 27, 1973. Shortly thereafter, he contacted Aetna to learn if the company would cover him against any liability arising from the collision. Aetna informed him that even though his policy had not yet been processed for cancellation, the company considered his coverage terminated as of July 14. Keough, hoping that Valley would then withdraw its cancellation request, sought to pay Valley the full amount of his indebtedness. Unfortunately for Keough, his offer of payment fell upon deaf ears. Keough filed a complaint with the Department of Business Regulation, alleging that Aetna refused to honor its policy commitment.

A hearing was held on February 5, 1974 before the Commissioner of Insurance.[2] The evidence presented at this hearing consisted almost entirely of the written documents which the parties deemed controlling, i.e. the insurance policy, the promissory note, Valley's July 11 letters to Aetna and Keough, and correspondence between Aetna and Keough. After presenting these documents, counsel for Aetna

---

[2]General Laws 1956 (1977 Reenactment) §§42-14-1 and 42-14-5 provide that the head of the Department of Business Regulation shall carry out chapters 1 to 5, inclusive, 7, 8, 12, 13, 15, 21, and 25 to 28, inclusive, of title 27 (Insurance) and administer the functions of the department relating to the regulation and control of insurance.

and Keough explained their respective positions on the proper interpretation to be given to the documents. The commissioner ruled that Valley's reference to department Regulation 16 in its cancellation letter to Aetna bound Aetna to give Keough the regulatory minimum of 10 days' notice before his coverage[3] could be cancelled. The commissioner, after describing the cancellation notice as a nullity, ordered Aetna to reinstate Keough's coverage.

Aetna appealed the commissioner's decision to the Superior Court under §42-35-15, naming both the commissioner and Keough as defendants. The Superior Court justice subsequently granted Aetna's motion for summary judgment. He found that the commissioner lacked the authority to order reinstatement and also pointed out that the most the commissioner could do was to invoke §42-35-8 of the Administrative Procedures Act and issue a declaratory ruling as to whether Regulation 16 applied to Keough's predicament. Upon examination of the commissioner's ruling on the applicability of the regulation, the trial justice held that the commissioner's finding was "contrary to the reliable, probative, and substantial evidence on the whole record." Judgment was entered for Aetna, whereupon the commissioner and Keough sought certiorari.

In our order granting the petition for certiorari, we requested the parties to brief the question of whether the commissioner has standing to seek review under §42-35-16 of a judicial reversal of one of his orders. Before proceeding to the substantive matters of this controversy, we will first dispose of the issue of the commissioner's standing.

---

[3]Regulation 16, section 3(B), provides in pertinent part:

"No insurer shall exercise its right to cancel a policy [for nonpayment of premiums] unless a written notice of cancellation is mailed or delivered to the named insured * * * at the address in the policy at least 10 days prior to the effective date of cancellation and shall include or be accompanied by a statement of the reason therefor."

Section 42-35-16 provides that only a "party in interest, if aggrieved by a final judgment of the superior or district court" may petition the Supreme Court for a writ of certiorari. This statute, as with others providing for judicial review of administrative agency determinations, makes "aggrievement" the requisite stake in the disposition of the dispute which justifies a person's pursuing a particular claim before this court. In *New England Tel. & Tel. Co.* v. *Fascio,* 105 R.I. 711, 717, 254 A.2d 758, 761-62 (1969), we held that "aggrievement results when the order, decision, or decree adversely affects in a substantial manner some personal or property right of the party or imposes upon it some burden or obligation." Admittedly, if *Fascio* was applicable, the commissioner could not assert that either a personal or property right of his was affected or that an additional burden was imposed upon him.

However, this court has recognized several exceptions to the general standard of "aggrievement." In the proper circumstances, an agency or head of an agency may seek judicial review of a lower court ruling in this court "if the public has an interest in the issue at stake which reaches out beyond that of the immediate parties" or if the judgment of the lower tribunal would otherwise escape review. *Altman* v. *School Committee,* 115 R.I. 399, 403, 347 A.2d 37, 39 (1975); *Buffi* v. *Ferri,* 106 R.I. 349, 259 A.2d 847 (1969). Here the Superior Court's judgment would not escape review if the commissioner were barred from petitioning for certiorari because Keough had already sought and obtained appellate review of the trial justice's ruling. Nevertheless, this proceeding does involve an issue that goes beyond the concerns of either Aetna or Keough, since it brings into focus an issue that unquestionably affects the public interest.

The Superior Court's ruling that a public official who is charged with the responsibility of administering laws that regulate an industry whose operation affects the life, property, and financial resources of many Rhode Islanders is

powerless to grant affirmative relief to an individual such as Keough must be considered in light of the public's concern that the insurance industry be held accountable for its conduct through effective regulation and proper enforcement of those regulations. Since the commissioner is the statutory guardian of the public's interest in this area, this official is especially suited to protect that interest before this court.[4]

Turning now to the merits of the controversy, we initiate our discussion by noting that, although framed in terms of a formal complaint seeking an adjudication of rights and duties, Keough's request for administrative assistance in his dispute with Aetna cannot be viewed as anything other than the commencement of a §42-35-8 declaratory ruling proceeding.[5] The commissioner has apparently agreed that this is the case, since he has not objected to the trial justice's characterization of the proceedings. Our own independent review reveals no statutory basis, other than §42-35-8, for the commissioner to become involved in a difference of opinion over the cancellation of a policy between an insured and the insurer.

---

[4]In support of its contention of no aggrievement, Aetna directs our attention to *Providence Journal Co.* v. *Mason*, 116 R.I. 614, 359 A.2d 682 (1976), and *Hassell* v. *Zoning Board of Review*, 108 R.I. 349, 275 A.2d 646 (1971). Its reliance upon these cases is misplaced. In *Hassell* we held that a zoning board was not a proper party to petition for certiorari because it was not invested with regulatory powers, as is the commissioner, but sat solely as a quasi-judicial tribunal with authority to hear and determine appeals from other administrative officials. *See* G.L. 1956 (1970 Reenactment) §§45-24-13 and 45-24-19. Likewise, the Commission for Human Rights in *Providence Journal Co.* was sitting in quasi-judicial proceedings in which it was commanded by statute to hear and impartially decide the factual allegations of employment discrimination. In this role it was not authorized, unlike the commissioner, to act as a representative of the public interest.

[5]General Laws 1956 (1977 Reenactment) §42-35-8 provides:

"Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

The commissioner also concedes, as he must, that neither §42-35-8 nor any other statute detailing his regulatory powers authorizes him to order an insurer to reinstate insurance coverage after finding that a department regulation is applicable to a given transaction. Section 42-35-8 simply states that in an agency proceeding of this type, the agency shall *declare* whether the regulation applies. The statute goes no further and is silent as to whether, after making a declaratory ruling, the agency may then grant some form of affirmative relief.

The commissioner argues that his authority to fashion specific relief is inherent in his statutory authority to regulate the insurance industry by the issuance of rules and is implicit in his statutory power to suspend or revoke an insurer's license when the public interest so requires. He reasons that if he may resort to the drastic step of revoking an insurer's license to protect the public welfare, then surely he may take the less onerous action in a §42-35-8 proceeding of ordering a company to reinstate insurance coverage. We do not agree.

The commissioner's reasoning is flawed in several respects. First, the mere fact that a declaratory-judgment-type procedure is established does not serve to confer upon the ruling tribunal jurisdiction to order affirmative relief as an adjunct of its authority to issue a declaratory order. *Sousa* v. *Langlois,* 97 R.I. 196, 196 A.2d 838 (1964); *Gray* v. *Leeman,* 94 R.I. 451, 182 A.2d 119 (1962); *Travelers Insurance Co.* v. *Nastari,* 94 R.I. 55, 177 A.2d 778 (1962). In construing the Uniform Declaratory Judgments Act, G.L. 1956 (1969 Reenactment) chapter 30 of title 9, we have stated that such a statutory proceeding functions merely as a means of having the Superior Court "declare rights, status and other legal relations." *Sousa* v. *Langlois,* 97 R.I. at 199, 196 A.2d at 840. Supplemental relief may not be granted simply because the tribunal has jurisdiction of a declaratory nature. *Gray* v. *Leeman,* 94 R.I. at 458, 182 A.2d at 123. Section 42-35-8 is an administrative counterpart of the

Declaratory Judgments Act and provides for no greater opportunity for the commission to fashion a remedy tailor-made to fit the matter under consideration.

Even if we were to assume that supplemental relief may be provided in a §42-35-8 action, we could not give our imprimatur to the commissioner's order. The reason for this illustrates the second flaw in the commissioner's argument.

While the licensing power of the commissioner is great, it does not permit him to automatically impose whatever lesser sanctions he deems fit to remedy a given situation. As head of a regulatory body, the commissioner may exercise only those powers either expressly, or by reasonable implication, conferred upon him by the General Assembly. *Department of Insurance* v. *Motors Insurance Corp.*, 236 Ind. 1, 138 N.E.2d 157 (1956); *Frank J. Linhares Co.* v. *Reliance Insurance Co.*, 357 N.E.2d 313 (Mass. App. 1976); *Johnson & Higgins of Miss., Inc.* v. *Commissioner of Insurance*, 321 So. 2d 281 (Miss. 1975); *Foremost Insurance Co.* v. *Ingram*, 292 N.C. 244, 232 S.E.2d 414 (1977). Conspicuously absent from title 27 is any suggestion that the commissioner as part of his authority can provide such relief as ordering the reinstatement of insurance coverage to a disgruntled policyholder.[6]

The statutes authorize the commissioner to suspend or revoke a license when the public interest so requires,[7] in-

---

[6]*Compare* title 27 *with* G.L. 1956 (1968 Reenactment) chapter 5 of title 28 wherein the Rhode Island Commission for Human Rights is granted broad regulatory powers to prevent discriminatory employment practices. In §28-5-24 the human rights commission is given authorization to fashion affirmative remedies, whether legal or equitable, to alleviate the injury done to individuals by unlawful labor practices.

[7]See G.L. 1956 (1968 Reenactment) §§27-2-15 (invalid policy clauses); 27-3-5 (domestic corporation agent); 27-3-12 (domestic corporation sub-agent); 27-3-19 (foreign corporation agent); 27-3-26 (foreign corporation sub-agent); 27-3-31 (broker); 27-3-34 (solicitor). This list is not exhaustive but is representative of the sections involving the licensing power.

stitute a civil action when there is a violation of regulations involving stock,[8] report certain unlawful practices to the Attorney General so that he may institute appropriate legal action,[9] and impose fines upon an offending company.[10] None of these sanctions available to the commissioner against an insurer even remotely resembles legal or equitable remedies which the commissioner asserts that he had jurisdiction to dispense. We believe that if the General Assembly had wanted the commissioner to exercise such authority, it would have so provided in clear and certain terms. The Legislature's omission in this regard evidences an intent to have the jurisdiction to provide legal and equitable relief remain in the traditional repository of the authority — the courts of the state.

After determining that the commissioner lacked the power to order the reinstatement of Keough's insurance, the trial justice then reviewed the commissioner's ruling that Regulation 16 was applicable to this controversy.

Examination of the commissioner's decision of February 17, 1974 reveals a narrow basis for his conclusion. The commissioner correctly observed at the outset of his analysis that usually an insured can terminate a policy at any time without the insurer's being obligated to provide him with the notice required by the regulation. After all, Regulation 16 clearly applies only to those cases in which the insurer initiates cancellation. It would be nonsensical to require a company to give prior notice when the insured is the party who directs that the policy be cancelled. The commissioner went on to state that, if the insured can terminate the policy personally, he may also do so through a third party by giving him a power of attorney. The holder of the power may then act on the insured's behalf in instructing the insurer to

[8]Section 27-1-28(c).

[9]See §§27-2-21 and 27-3-14.

[10]See §§27-3-21 and 27-10-11.

effect cancellation. In such a situation the insurer is not required to comply with the regulation.

Even though the commissioner had no doubt that Valley was acting in conformity with the agreement it had with Keough and that, as such, the request for cancellation came from the insured, he was of the opinion that Valley's reference to the regulation bound the insurer to afford Keough with 10 days' prior notice before the policy could be terminated. The trial justice, in reviewing the commissioner's decision under §42-35-15, carefully considered the pertinent documents, the hearing before the commissioner, and the commissioner's decision. Although he was a bit perplexed as to why Valley had referred to the regulation, he felt that the commissioner's interpretation of its significance did not comport with "the reliable, probative, and substantial evidence on the whole record."[11] In particular, the trial justice pointed to the undisputed fact that it was Valley, acting as agent for the insured, and not the insurer, who was seeking cancellation. The unambiguous language in Keough's promissory note specified that his default in payment would constitute an election to have the Aetna policy cancelled. Valley was merely attempting to exercise its power of attorney and carry out its agreement with Keough to cancel the policy when it wrote to Aetna on July 11. Consequently, the trial justice granted Aetna's motion for a summary judgment.

In affirming the trial justice's actions, we would stress that Valley's reference to the departmental regulation is totally irrelevant. The undisputed evidence reveals that Aetna, in terminating the insurance coverage, was acting at

---

[11]In using this terminology, the trial justice was echoing the standard for review to be found in §42-35-15(g)(5). This section provides that the Superior Court may reverse or modify an administrative decision where the administrative findings, inferences, conclusions, or decisions are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

the request of its insured's attorney. The regulation, by its very terms, comes into play only when it is the insurer who is initiating the termination of the insurance, and there is no question that this did not occur in the case at bar.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record in the case is remanded to the Superior Court with our decision endorsed thereon.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*William T. Murphy, John H. Hines, Jr.,* for petitioners.

*Hinckley, Allen, Salisbury & Parsons, Robert W. Lovegreen,* for respondent.