DECISION
This is an administrative appeal filed by the Medical Malpractice Joint Underwriting Association of Rhode Island ("MMJUA") from a decision of the Department of Business Regulation ("DBR") with respect to its request for an insurance rate increase in May of 2005. Although the DBR approved that request, it ordered that the MMJUA rate increase be phased in over the course of two and one-half years. The MMJUA argues that the DBR exceeded its statutory authority in ordering the rate increase to be phased in over time. The MMJUA also argues that the decision is clearly erroneous in view of the substantial evidence of record and constitutes an abuse of the DBR's discretion. For the reasons set forth in this Decision, this Court affirms the decision of the DBR.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The MMJUA is a creature of statute. See R.I.G.L. § 42-14.1-1;see also Insurance Regulation 21 of the Department of Business Regulation. Membership in the MMJUA is mandated for all parties authorized to write policies of personal injury liability insurance within Rhode Island. Id. Any modification in rates by a casualty insurer must be filed with the DBR for approval. R.I.G.L. § 27-9-7. The MMJUA currently provides Hospital Professional Liability Insurance ("HPLI") to three hospitals and to 130 nursing homes and rehabilitation centers in the state of Rhode Island.[1]
In May of 2005, the MMJUA filed a rate increase request of plus ninety-nine point eight percent (+99.8%) for HPLI policies with the DBR pursuant to R.I.G.L. § 27-9-7. The MMJUA had not filed a rate increase request with the DBR in the ten years before that request. Prior to the August 15, 2005 hearing on the matter, the MMJUA agreed to lower its requested rate increase to plus seventy percent (+70%). The DBR held public hearings on the MMJUA's requested rate increase on August 15, August 16 and September 1 of 2005. The MMJUA, the Office of the Attorney General, and other interested parties, including representatives of the hospitals affected by the rate increase, presented evidence and testimony to the DBR at these hearings. On September 26, 2005, two co-hearing officers who had been appointed by the Director of the DBR to hear this matter, issued a comprehensive and well-reasoned decision, inclusive of findings of fact and conclusions of law. In that decision, they approved the MMJUA's request for a plus seventy percent (+70%) increase in premium base rates as actuarially sound and not excessive, inadequate or unfairly discriminatory but ordered it phased in over time, such that an increase of plus thirty-five percent (+35%) would be effective as of November 1, 2005 and a further increase of plus twenty-five point nine percent (+25.9%) would be effective as of November 1, 2006.[2] Dec'n of Hr'g Offs. at 5-12. On that same date, A. Michael Marques, Director of the DBR and Insurance Commissioner for the State of Rhode Island, accepted and adopted the findings of fact, conclusions of law and recommendations of the co-hearing officers.
The MMJUA filed a timely appeal to this Court from the DBR's final agency decision. It does not challenge the DBR's decision approving its requested rate increase, but it does challenge the DBR's decision to phase in the rate increase over time. The MMJUA argues that, in requiring the rate increase to be phased in over two and one-half years, the DBR exceeded the statutory authority under which it receives its powers, making the DBR's decision effectively illegal. See Pl.'s Mem. at 7. It also argues that the decision of DBR is clearly erroneous in view of the substantial evidence of record and is arbitrary and reflective of an abuse of discretion by the agency.
The MMJUA asks this Court to modify the decision of the DBR to require that the plus seventy percent (+70%) increase in base premium rates for HPLI coverage be effective in toto for all policies issuing or renewing after October 1, 2005. It effectively seeks reversal of the part of the DBR's decision requiring the rate increase to be phased in over time.
The DRB counters that its decision comports with its enabling statute, as it is empowered by law to determine not only the propriety of a requested rate request but also the effective date of any such request. It argues that its decision to order the rate increase in this case to be phased in over time is supported by the evidence of record and is neither arbitrary nor an abuse of discretion, as it took into account the amount of time between rate increase requests filed by the MMJUA and the effect such an increase would have on the MMJUA as well as the hospitals involved.
 STANDARD OF REVIEW
This court's review of an administrative agency's decision is controlled by the Administrative Procedures Act found in R.I.G.L. § 42-35-15. According to the Act, the court "shall not substitute its judgment for that of the agency as to the weight of the evidence." R.I.G.L. § 42-35-15(g). The court may affirm the decision of the agency, remand the decision for further proceedings, or amend or reverse an agency's decision:
 (g) . . . if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Id. On review, this Court should grant deference to DBR's interpretation of a statute when its "administration and enforcement have been entrusted to the agency." In reLallo, A.2d. 921, 926 (R.I. 2001). Questions of law, however, are not binding on the court and are reviewed de novo.Narragansett Wire Co. v. Norberg, 18 R.I. 596, 607, 376 A.2d 1,6 (R.I. 1977). Furthermore, this Court should not substitute its own judgment for that of the DBR and may only invalidate findings of fact when the findings are "totally devoid of competent evidentiary support." Bunch v. Board of Review, R.I. Dept. ofEmployment and Training, 690 A.2d 335, 337 (R.I. 1997); Milardov. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
 ANALYSIS The DBR's Decision Requiring That The MMJUA's Rate Increase Be Phased In Over a Reasonable Period of Time Does Not Exceed the DBR's Statutory Authority
The MMJUA contends that the DBR exceeded its statutory authority under R.I.G.L. § 27-9-1 et seq. by conditioning its approval of the MMJUA's requested insurance rate increase on the phasing in of that increase over the course of two and one-half years. The MMJUA suggests that the DBR's power under its enabling statute is limited to determining whether a rate request is actuarially sound and whether it is excessive, inadequate or unfairly discriminatory. If it determines that the rate request is actuarially sound and is not excessive, inadequate or unfairly discriminatory — as the DBR did here — the MMJUA argues that the DBR must approve the rate request with the effective date proposed by the MMJUA and that the DBR has no equitable power conferred on it by the statute to delay its implementation.
The DBR counters that the statutory requirement in R.I.G.L. §27-9-7 that "[e]very [rate] filing shall state the proposed effective date of the [rate increase]" places the determination of the effective date of a proposed rate increase within the statutory delegation of authority to the agency. It argues that this statutory language would be meaningless if "the filer were able to select the filing date of the increase without review of the Department." Def's Mem. at 12. According to the DBR, therefore, it had the power to order the proposed rate increase filed by the MMJUA to be phased in over a reasonable period time.
Whether the DBR exceeded its statutory powers in delaying implementation of the MMJUA's requested rate increase in this case is important because an agency may "exercise only those powers [which], either expressly or by reasonable implication, are conferred upon [it] by the General Assembly." Ligouri v.Aetna Cas. Ins. Co., 119 R.I. 875, 883, 384 A.2d 308, 312
(R.I. 1978). "As legislative creatures without inherent or common-law powers, administrative agencies possess no ability" to take any action that is not specifically granted in the enabling legislation that creates them. F. Ronci Co., Inc. v.Narragansett Bay Water Quality Management District Comm'n,561 A.2d 874, 881 (R.I. 1989). "When [the General Assembly] creates an administrative tribunal pursuant to a legislative grant of authority, its function is determined by the legislature and its jurisdiction can neither be enlarged nor restricted. . . ."Ajootian v. Housing Bd. Review of City of Providence,98 R.I. 370, 373, 201 A.2d 905, 907 (1964). The question before this Court, therefore, is whether the provisions of the DBR's enabling statute, R.I.G.L. § 27-9-1 et seq,. expressly or by implication, grant the DBR the power to approve the MMJUA's suggested rate increase while requiring that increase to be phased in over a two and one-half year period of time.
According to the statute at issue:
 [t]he purpose of this chapter is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory. . . . This chapter shall be liberally interpreted to carry into effect the provisions of this section.
R.I.G.L. § 27-9-1. With regard to rate filings, the statute specifies that:
 Every insurer shall file with the commissioner every manual of classification, rule, rate, rating plan, rating system, and modification of any of these which it proposes to use. . . . Every filing shall state the proposed effective date of the plan or system and shall indicate the character and extent of the coverage contemplated.
Id. § 27-9-7.
It is clear from the language of this statute that the DRB is charged with the duty to review a proposed insurance rate request. In undertaking its review of any insurance rate filing, the DBR acts as the protector of the public interest. Id. §27-9-1. It must ensure that any proposed insurance rates are not "excessive, inadequate, or unfairly discriminatory." Id.
The rate filing request typically includes voluminous statistical, financial and actuarial data addressing such matters as the insurer's past and prospective loss experience, catastrophe hazards, margins for underwriting profits and contingencies, dividends, savings and unabsorbed premium deposits allowed or returned by insurers to their insureds, and past and prospective expenses. See id. § 27-9-4. As mandated by the statute, the filing also must include the proposed effective date of the rate request. Id. § 27-9-7. Both the financial data and the proposed effective date are necessary for the DBR to determine whether the proposed rate request is actuarially sound. That information is also critical to the DBR's determination of whether the proposed rate request is excessive, inadequate or unfairly discriminatory.
In making the latter determination, the DBR must balance the needs of insurers with the needs of their insureds for the overall protection of the public. As shown by the DBR's own regulations, all personal injury liability insurers in the state are mandated to join the MMJUA. Insurance Regulation 21, § 4(A). The MMJUA is charged with the responsibility to "provide a market for medical malpractice insurance on a self-supporting basis" in order to "create a stable market for medical malpractice insurance within the state of Rhode Island." Id. § 4(B). In reviewing any proposed rate request filed by the MMJUA, therefore, the DBR must consider the need for the MMJUA to charge adequate insurance rates to enable it to protect its members' interests by being self-supporting, financially sound and solvent. At the same time, the DBR must ensure that any rate request is not excessive vis-à-vis the MMJUA's insureds.
In construing the DBR's enabling statute, this Court must give it the meaning that is most consistent with these policy goals and its obvious purposes. Zannelli v. DiSandro, 84 R.I. 76, 81,121 A.2d 652, 655 (1956). This Court must presume that the legislature intended every word of the statute to have a useful purpose and to have some force and effect. Defenders ofAnimals, Inc. v. D.E.M., 553 A.2d 541, 543 (R.I. 1989). If the statute is subject to interpretation, the construction given it by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous and unauthorized. Martone v. Johnston SchoolCommittee, 824 A.2d 426, 431 (R.I. 2003).
Mindful of these precepts of statutory interpretation, this Court finds that while the legislature did not grant the DBR the express statutory authority to review the proposed effective date of a rate request or to order an approved rate request to be phased in over time, it impliedly granted the DRB the authority to review and reasonably alter the proposed effective date of such a rate request. This implied authority can be gleaned, in the first instance, from the language of the statute that mandates that "[e]very filing shall state the proposed effective date of [the proposed rate request]." R.I.G.L. § 27-9-7. While the MMJUA attempts to characterize that language as simply a "direct[ion] to insurers on the mechanics of filing a rate plan," Pl's Reply Mem. at 2, the fact that insurers are required by the statute to state the "proposed" effective date of any rate request implies that the DBR has discretion to review and alter that proposal. There would have been no reason for the legislature to require an insurer to state the date on which it proposes that its rate request be effective unless that date were subject to review and possible modification by the DRB. Indeed, this statutory language would be meaningless, as the DBR suggests, if "the filer were able to select the filing date of the [request] without review of the Department." Def's Mem. at 12. Just as the statute mandates the filing of the proposed rate request and supporting documentation so that it can be reviewed by the DBR, so too it mandates the filing of the proposed effective date of the request for review by DBR. R.I.G.L. §27-9-7.
Furthermore, the proposed effective date of any rate request must be subject to review by the DBR because it is material to the DBR's analysis of the actuarial soundness and fairness of the rate request itself. While a proposed rate request might be determined to be actuarially sound and not excessive, inadequate or unfairly discriminatory based on a certain effective date, alteration of that date could render an otherwise just rate increase excessive, inadequate or unfairly discriminatory. The DBR recognized as much when, in its decision, it found that a determination that a rate request is actuarially supported would not end its review of the request, as the timing of the increase proposed and how that timing affects the insureds is part of its inquiry into whether the rate request is "excessive, inadequate or unfairly discriminatory." Dec'n of Hr'g Offs. at 8-9 (quoting R.I.G.L. § 27-9-1). Implicit in its enabling statute is the notion that the DBR, as the agency charged by the legislature with the duty "to promote the public welfare," must be permitted to review and reasonably alter the effective date of a rate request proposed by an insurer to fulfill its statutory duty. R.I.G.L. § 27-9-1. Such a conclusion is supported by the fact that the General Assembly explicitly mandated that the enabling statute at issue "be liberally interpreted to carry into effect [this] provision." Id.
Moreover, the DBR itself has interpreted its own enabling statute to allow it to review and alter the proposed effective date of a rate request. See Dec'n of Hr'g Offs. (as approved by the Director of DBR). This Court must afford the agency's interpretation great weight and deference because the statute does not explicitly bar the DBR from exercising such power, such authority is consistent with the purpose of the statute and the statute's express requirement that its provisions be interpreted liberally to achieve that purpose, and the DBR's interpretation of the statute as granting it that authority is not clearly erroneous. See Martone v. Johnston School Committee,824 A.2d at 431.
While the MMJUA has raised the concern that such an interpretation has no bounds and would allow the DBR to phase in a single rate increase over a span of ten or twenty years, see
Pl's Reply Mem. at 2, this Court does not interpret the enabling statute at issue as granting the DBR unbridled authority to alter the proposed effective date of a rate request. It has the implied authority under the statute to review and to order the phasing in of a proposed rate request only if "necessary in order to achieve the objectives of the statute, and if the implied power is exercised in a reasonable manner." State Farm Mut. Auto. Ins.Co. v. Barnes, 41 Colo.App. 380, 383, 585 P.2d 929, 931 (1978). Any decision of the DBR to modify the effective date of a rate request from that proposed by an insurer is subject to review by this Court, pursuant to R.I.G.L. § 42-35-15, to ensure that it comports with the provisions of R.I.G.L. § 27-9-1 et seq., is not clearly erroneous in view of the substantial evidence of record and is not arbitrary or reflective an abuse of the agency's discretion.
Interpreting the enabling statute at issue as granting the DBR the implied authority to review and modify the proposed effective date of a rate increase is supported as well by authority outside of this jurisdiction. In Golden Rule v. Long, the North Carolina Court of Appeals upheld a decision by the North Carolina Commissioner approving a rate increase conditioned on a one-year rate guarantee and delaying the rate increase for up to one year in order to maintain the agency's policy against more than one rate increase per twelve months. Golden Rule v. Long,113 N.C. App. 187, 439 S.E.2d 599 (1993). In that case, the insurer argued that this conditional approval exceeded the Commissioner's statutory authority. The appeals court responded by explaining, "[i]n construing laws regarding statutory authority of an administrative agency, the court's function is to ensure that the purpose of the Legislature in enacting the law is accomplished."Id. at 195. The appeals court then quoted the North Carolina Supreme Court, stating:
 [t]he Legislature can obviously not anticipate every problem which will arise before an administrative agency in the administration of an act. The legislative process would be completely frustrated if that body were required to appraise beforehand the myriad situations to which it wished a particular policy to be applied and to formulate specific rules for each situation. Clearly, then, we must . . . leave to executive officers the authority to accomplish the legislative purpose. . . . The modern tendency is to be more liberal in permitting grants of discretion to administrative agencies in order to ease the administration of laws as the complexity of economic and governmental conditions increases.
Id. at 195-96 (quoting State ex rel. Comm'r of Ins. v. RateBureau, 300 N.C. 381, 402, reh'g denied, 301 N.C. 107 (1980)). Although this out-of-state authority is not binding on this Court, its reasoning is persuasive. Notwithstanding the failure of the Rhode Island legislature to explicitly address the extent of the DBR's review powers concerning the proposed effective date of a rate request, the statute at issue should be interpreted as impliedly granting the DBR the discretion to do so to ensure that the underlying purpose of the statute is effectuated.
The case of State Farm Mut. Auto. Ins. Co. v. Barnes,41 Colo.App. 380, 383, 585 P.2d 929, 931 (1978), relied upon by the MMJUA, does not suggest otherwise. In that case, the Colorado Appeals Court found that the State Insurance Commissioner had exceeded his statutory authority by approving a rate increase under the conditions of a fixed profit ceiling by requiring State Farm to hold in trust all net underwriting profits over six point four percent (6.4%). State Farm Mut. Auto. Ins. Co. v. Barnes,41 Colo.App. at 383, 585 P.2d at 931 (1978). Although the Colorado court found that the agency had overstepped its statutorily authorized jurisdiction, the court went on to explain that "[p]owers not expressly granted to a regulatory agency will be implied only if such powers are necessary in order to achieve the objectives of the statute . . . and if the implied power is exercised in a reasonable manner." Id. The court determined that there was no necessity for the Commissioner to impose a fixed profit ceiling upon State Farm and therefore the action did not fall under powers implied statutorily. Id.
The instant case can be distinguished from Barnes based on the language of the relevant Rhode Island statute and the conditions imposed by the DBR. The stated purpose of the relevant statute is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory, and to authorize and regulate cooperative action among insurers in rate making and in other matters. . . ." R.I.G.L § 27-9-1. The DBR is given authority to accomplish this goal through R.I.G.L. § 42-14-1.[3] It is therefore necessary that the DBR be granted the leeway to interpret the enabling statute in a way that allows it to fulfill the goals of the statute; the agency must be permitted to "promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory." Id.
The DBR decided to approve the MMJUA's requested rate increase of plus seventy percent (+70%) by conditioning that rate hike on it being phased in over two and one-half years. Unlike the Commissioner's imposed conditions in Bates, the DBR's decision to phase in the approved rate increase falls easily within the powers "necessary in order to achieve the objectives of the statute." The Rhode Island statute is designed to create a regulatory screen through which insurance rates must pass in order to protect the public welfare. If the DBR did in fact conclude that an immediate rate increase of plus seventy percent (+70%) would be detrimental to the public welfare, the agency was well within its statutorily granted authority to order the increase phased in over a reasonable period of time.
The purpose of R.I.G.L. § 27-9-1 et seq., as stated previously, is to protect the public welfare with respect to insurance rates. While this Court recognizes that the MMJUA is obligated to ensure a stable insurance market within Rhode Island and also is responsible for representing the interests of its mandatory members, see Insurance Regulation 21, § 4 (A), (B), the DBR is held accountable by statute to protect the public welfare. Nothing in the statutory composition of nor the obligations imposed upon the MMJUA, therefore, changes the responsibilities of the DBR.
The DBR's interpretation of its enabling statute as permitting it to review the MMJUA's proposed effective date for its rate increase and to require the MMJUA to phase in that rate increase over the course of two and one-half years is consistent with the statutory requirement that the MMJUA file with its rate request a statement of the proposed effective date for the rate request and advances the statutory goal of promoting "the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory. . . ." Id.
The DBR, therefore, did not exceed its statutory authority when it reviewed the MMJUA's proposed effect date for its rate request and placed conditions on the approval of that rate hike by ordering the rate increase to be phased in over two and one-half years. This Court must go on to determine, therefore, whether the DBR's decision in this regard was clearly erroneous in view of the reliable, probative, and substantial evidence of record and whether it was arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.
 The DBR's Decision Is Not Clearly Erroneous In View Of The Reliable, Probative, And Substantial Evidence Of Record
The next issue that this Court must address is whether the DBR's decision to phase in the MMJUA's proposed rate increase over a two and one-half year period of time is clearly erroneous in view of the reliable, probative and substantial evidence of record. The DBR took several factors into account in making its decision, including the amount of time between rate increase requests by the MMJUA, the proposed effective date of the increase, and the overall affect that the increase would have both on the MMJUA and the hospitals involved. After holdingthree different public hearings on the matter and taking these factors into consideration, the DBR held that the plus seventy percent (+70%) requested increase in base rates filed by the MMJUA was actuarially justified and was not "excessive, inadequate or unfairly discriminatory." In fact, the DBR found that, to remain competitive and solvent, the MMJUA was required to keep all of its rates current and up to date. It further found that a single, imminent increase of such proportions would be unfair and detrimental to the hospitals it involved. The DBR thus decided to order the increase in insurance rates phased in over a period of two and one-half years, with an increase of plus thirty-five percent (+35%) effective November 1, 2005 and another increase of plus twenty-five point nine percent (+25.9%) effective November 1, 2006.
The base rates that the MMJUA charged hospitals had not been updated since October 1, 1995. According to the MMJUA, it was under no statutory or regulatory responsibility to file for rate increases with any specific frequency. See Letter from David P. Whitman, Counsel for MMJUA, Hanson Curran LLP, to Elizabeth Kelleher Dwyer, Deputy Chief of Legal Services, Rhode Island DBR (Aug. 25, 2005) (on file with the DBR Director's Office). To clarify why the organization had not made a filing for an increase in rates in almost ten years, the MMJUA explained that from 1998 through 2001, it had no hospital insureds. When the commercial insurance market began to tighten in 2002, however, hospitals began to return to the MMJUA. By 2004, the MMJUA insured four hospitals, still at rates established in 1995. The MMJUA offered "no explanation for it failure to file for three years after its first hospital insured returned." Def.'s Mem. at 14. This history was one factor that the DBR used in making its decision concerning the MMJUA's rate increase proposal.
The DBR found that the MMJUA did have a responsibility to keep its rates current and that neither a lack of hospital insureds from 1998 through 2001 nor the monetary deterrent of filing for a rate increase were satisfactory excuses. In its decision, the DBR wrote:
 [t]he residual market exists to serve as an insurer of last resort when the market in a particular line of business is unable to provide coverage to all insureds who request it. While MMJUA's justification for delay on filing might be valid if it were a competitive carrier, it makes no sense for a residual market. As the residual market, the MMJUA is required to accept all comers when market forces change. MMJUA has no control over this change and it would be almost impossible to predict with certainty when the change will occur. Proper operation of a residual market, therefore, requires MMJUA to keep all of its rates current. Failure to do so could actually result in the residual market becoming the carrier of choice since if the rates become similar to or lower than competitive market rates the residual market becomes a more attractive alternative. This is exactly the opposite of the proper function of a residual market.
Dec'n of Hr'g Offs. at 6-7. The DBR reasoned that while the cost to the MMJUA for filing a rate increase was high ($153,000 without a full hearing), "cost cannot be an excuse for the residual market failing to keep rates current." Id. at 7. Although "keeping its rates current" was exactly what the MMJUA was attempting to do through its requested rate increase in 2005, the DBR found that the delay in filing was unjustified and prejudicial to the hospitals that it affected.
Another factor that the DBR considered when making its decision to order the MMJUA's requested rate increase to be phased in over time was the proposed effective date of the increase. The MMJUA's proposal included a date of October 1, 2005 for the plus seventy percent (+70%) increase. If the rate increase were to go into effect on this date, the consequences would be compounded by other factors including a scheduled "uncapping" of the Hospital Experience Rating Plan that would affect three of the hospitals insured and an additional adverse premium impact that two of the hospitals insured would experience as a result of their policies changing from third to fourth year claims made.
According to the DBR's decision, had the proposed rate increase gone into affect on October 1, 2005, Hospital A, which paid $540,472 for insurance coverage between October 1, 2004 to September 30, 2005, would have paid $1,010,766 for coverage between October 1, 2005 and September 30, 2006. Dec'n of Hr'g Offs. at 7. The other hospitals insured by the MMJUA would see similar hikes in their rates, with one hospital experiencing a rate increase of $1,130,934 between the two years. Id.
According to testimony by hospital representatives, the hospitals had simply not taken such an increase in rates into consideration when creating their annual budgets and would not, therefore, be able to handle such an increase in rates. Tr. of DBR Hr'g. inIn re: Medical Malpractice Joint Underwriting Association ofRhode Island Hospital Professional Liability Insurance, DBR No. 05-I-0113, Vol. III at 3-6 (Sept. 1, 2005) [hereinafter Tr.]. Hospitals that had anticipated and therefore budgeted for a nine percent (9%) to thirteen percent (13%) rate increase were looking instead at a seventy-seven percent (77%) to eighty-seven percent (87%) rate increase, equaling an amount of money far beyond what they had previously expected to pay, while leaving the insureds with very little time to adjust their budgets adequately. Id.
The DBR concluded, and the parties do not dispute on appeal, that the MMJUA's requested rate increase of plus seventy percent (+70%) was actuarially justified. The MMJUA had not updated its rates in ten years and to maintain its proper role in the insurance industry, its rates should be kept current. The DBR also concluded, however, that it was unreasonable for the MMJUA to ask that, "its insureds accept a rate increase in one fell swoop to make up for its ten years of delay." Dec'n of Hr'g Offs. at 8. The DBR decided, therefore, to "balance the making of the MMJUA rate adequate with allowing insureds appropriate notice of the increased rates they will be required to pay." Id. at 9. It struck this balance by approving the requested rate increase but ordering it phased in over two and one-half years. While it gave the MMJUA advance notice that it would consider a phasing in of any rate increase over time, the MMJUA did not argue or present any evidence that a phase in would impact its solvency. Def's. Mem. at 16. Moreover, the DBR confirmed independently that a phase in would not result in insolvency. Id.
When reviewing an agency decision, this Court "is not to examine whether the evidence is weak or strong, or even incredible; instead, the test is whether the findings of fact are supported by competent evidence." Parenti v. McConaghy,
2006 R.I. Super. LEXIS 49 at *38-9 (citations omitted). The DBR's decision to order the requested rate increase to be phased in over two and one-half years is supported by competent evidence, including the amount of time between rate increase requests by the MMJUA, the proposed effective date of the increase, and the overall affect that the increase would have both on the MMJUA as well as on the hospitals involved. Based on the evidence presented, the delay in the effective dates for the approved rate increase is reasonable. As such, this Court determines that the DBR's decision is not clearly erroneous in view of the reliable, probative, and substantial evidence of record.
 The DBR's Decision Is Not Arbitrary Or Characterized By An Abuse Of Discretion
The final issue that this Court must address is whether the DBR's decision to phase in the requested rate increase over a period of two and one-half years is arbitrary, capricious, or characterized by an abuse of discretion or an unwarranted exercise of discretion. The arbitrary and capricious standard means that, "[a] reviewing cour[t] will uphold administrative decisions . . . as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by substantial evidence." Goncalves v. NMU Pension Trust, 818 A.2d 678, 682-83
(R.I. 2003). As discussed above, the DBR had the statutory authority to review the proposed effective date of the MMJUA's rate request and to order the requested rate increase to be phased in over a reasonable period of time. Furthermore, the DBR considered many relevant factors before making the decision to approve the MMJUA proposed rate increase while ordering it phased in over two and one-half years. Therefore, the DBR acted within its statutory authority to make this decision, and its decision is rational, logical, and supported by substantial evidence. Consequently, this Court finds that the DBR's decision is not arbitrary, capricious, or characterized by an abuse of discretion or an unwarranted exercise of the DBR's discretion.
 CONCLUSION
The DBR's decision to order in the MMJUA's requested rate increase to be phased in over a period of two and one-half years does not violate Rhode Island law or exceed the DBR's statutory authority. Moreover, the DBR's decision is not clearly erroneous in view of the reliable, probative, and substantial evidence of record. Finally, the DBR's decision is not arbitrary, capricious, or characterized by abuse of discretion or an unwarranted exercise of the DBR's discretion. In reviewing the decision of the DBR, this Court should not substitute its own judgment for that of the agency; instead, it must affirm the decision of the DBR as long as a review of the record shows that the decision is legally proper and supported by competent evidence. JohnstonAmbulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 804-805
(R.I. 2000). In this case, there is legally competent evidence to support the DBR's findings of fact and conclusions of law as well as a statutory basis for its decision. This Court, therefore, must uphold the agency's decision to accept the MMJUA's proposed rate increase while ordering it phased in over a period of two and one-half years.
For all of these reasons, the decision of the Department of Business Regulation and the Insurance Commissioner of the State of Rhode Island dated September 26, 2005 is affirmed. Counsel shall confer and submit forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] At the time the MMJUA filed for its rate increase with the DBR, it had 4 hospital insureds. One hospital has since chosen a self-insurance program for its primary coverage. Dec'n of Hr'g Offs. at 3 n. 2.
[2] A thirty-five percent (35%) increase in the first year, followed by a twenty-five point nine percent (25.9%) increase in the second year is equivalent to a seventy percent (70%) increase in rates because once the rates are raised in the first year, the twenty-five point nine (25.9%) rate increase in the second year would be applied to the higher base rates effective in the first year. "The compounding effect of the first year increase reduces the percentage necessary in the second year to arrive at the 70% increase in base rates." Def.'s Mem. at 16.
[3] This statute states, in pertinent part, as follows: "There shall be a department of business regulation. The head of the department shall be the director of business regulation who shall carry out, except as otherwise provided by this title, . . . chapters 1-36 of title 27." R.I. Gen. Laws § 42-14-1.