No. 22481.

WALTER S. LOWE, D/B/A LOWE'S FUNERAL HOME, ALAMOSA
FUNERAL HOME *v.* UNITED STATES FIDELITY AND GUARANTY
COMPANY, A MARYLAND CORPORATION.

(466 P.2d 73)

Decided March 9, 1970.

MYRICK, CRISWELL and BRANNEY, WILLIAM E. MYRICK,
WILLIAM F. KLAS, for plaintiff in error.

DUANE O. LITTELL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE parties appear here in the same order as in

the trial court and will be referred to as plaintiff and defendant. This was an action to recover under the collision coverage of a policy issued by defendant to plaintiff. The jury returned a verdict in favor of the plaintiff. However, the trial court entered a judgment notwithstanding the verdict in favor of the defendant. The principal question presented is whether the court committed error by ruling in effect that the policy was cancelled and not in force at the time the plaintiff's automobile was involved in an accident. We answer the question in the negative and affirm the ruling of the trial court.

The defendant urges that we should dismiss the writ of error by reason of the failure of the plaintiff to comply with R.C.P. Colo. 115(a) which requires a statement in the brief of the facts material to a decision of the case. While the point is well taken, we have concluded not to ground our opinion upon the marked disregard of our rules by plaintiff's counsel.

The plaintiff resided in Alamosa and operated a funeral home there and another at La Jara. For many years he maintained his automobile casualty and some other insurance with the defendant. The defendant's sales agent was Mr. Logback, who maintained his agency at Antonito and who was a close friend of the plaintiff. For several years the policies were for annual terms commencing on June 17th. With reference to the policy for the year commencing June 17, 1961, and also for another policy not here involved, the plaintiff made a down payment of $184.30 to Mr. Logback and executed and delivered to Mr. Logback a promissory note for the balance of $748.48. Mr. Logback immediately assigned the note to The Del Mar Company, referred to herein as Del Mar. (To simplify the matter we will treat it as if only the automobile casualty policy was purchased.)

Del Mar was a solely owned subsidiary of the defendant. It might be characterized as a limited finance company. Its function was to accept assignments of in-

sureds' promissory notes taken by the defendant's agents for the unpaid balances of premiums payable for defendant's policies. Upon becoming assignee of such a note, it would pay the defendant the face amount of the note less the portion thereof representing a service charge. If a maker of a promissory note became in default, Del Mar would request the defendant to cancel the policy or policies issued to the maker and the defendant would pay the unearned premium to Del Mar. Usually, the unearned premium would exceed the unpaid balance of the note and the excess would be returned to the insured. While the defendant owned all the stock in Del Mar, it appears that the latter conducted its financing business as a separate entity.

Defendant's sales agents were provided with forms of such notes. The one executed by the plaintiff in June 1961 in the amount of $748.48 provided that payments of $93.56 each should be made on the 17th day of each month, commencing on July 17, 1961. This note contained the following provisions:

"To secure the payment of this note the undersigned hereby assigns to you all moneys now due or that may become due to the undersigned under any such policies; and the undersigned irrevocably constitutes you the attorney of the undersigned to receive and receipt, enter satisfaction of any judgment, and endorse the name of the undersigned to any check or draft, for all moneys due or that may become due the undersigned as aforesaid, and to apply the same to the payment of this note and return any excess such moneys to the undersigned.

"On default of any payment due hereunder, . . . the entire unpaid balance under this note shall become due and payable at your election. You are irrevocably authorized without any notice to the undersigned (1) to cause . . . cancellation of any or all such policies (irrespective of whether or not cancellation by the undersigned as a matter of right is provided for therein) from or after at your election the occurrence of any such default . . . ."

Mr. Logback assigned the note to Del Mar, which then notified the plaintiff that it had accepted the assignment. The plaintiff did not make timely payment of the July 17, 1961 installment and on July 25th Del Mar sent him what its manager characterized as its "did-you-forget notice." Del Mar notified Mr. Logback that the July 17th installment was delinquent and on August 3rd Mr. Logback wrote to the plaintiff, advising that he had been informed of the delinquency and suggesting that the plaintiff give the matter his attention. On August 7th Del Mar transmitted to the defendant's Denver office a completed form notice of cancellation, which contained the following:

"As previously advised, this Company holds the note of the above assured and an assignment and power of attorney authorizing this Company to cause cancellation of the above described policy (ies) on default in the payment of any installment due on said note, and to receive and receipt for all moneys due the assured under said policy (ies).

"Said assured is now in default in the payment of an installment due on said note and we therefore cancel the above described policy (ies) effective at the beginning hour specified in the policy (ies) on the date following the date of this letter, or on such later date (the minimum period in any event) as may be required by law and request you to pay this Company the return premium." On August 10th Del Mar received a check from the plaintiff in the amount of $93.56 and wrote to the defendant: "Under date of Aug. 7, 1961, we canceled the above policy (ies). We are in receipt of remittance from the Assured and therefore request that you void our cancellation and reinstate the policy (ies)." The policy was reinstated by the defendant.

With respect to the installment payable on August 17, 1961, those involved played and sang the same tune, second verse. The "did-you-forget notice" was transmitted on August 25th; the cancellation notice was sent on September 7th; Del Mar received payment of the in-

stallment on September 14th and requested reinstatement; and the policy was reinstated.

The plaintiff did not pay the September 17, 1961 installment. The "did-you-forget notice" was issued on September 25th and on October 9, 1961 Del Mar gave the Denver office of defendant a notice of cancellation on the same form above quoted. Its manager testified that it transmitted copies of this notice to the plaintiff, to Mr. Logback and to the mortgagees of the plaintiff's automobiles. The defendant cancelled the policy on October 20th or 21st, delaying the cancellation by reason of policy provisions requiring ten days' notice to be given to the mortgagees. On October 12th Mr. Logback wrote to the plaintiff as follows:

"I am in receipt of a copy of cancellation notice from the Del-Mar Company in connection with your comprehensive liability policy due to a payment not having been received by them. Undoubtedly you have taken care of this matter, but of course you realize the importance of receiving these cancellation notices, and trust the matter is cleared up and will have your immediate attention."

To this letter he attached a copy of the cancellation notice.

On October 23rd Mr. Logback again wrote to the plaintiff as follows:

"Dear Walt: As per my letter of October 12 with regards to the cancellation of your general liability policy, I am now enclosing a letter which I received today from our Denver branch office regarding the matter. I believe this letter is self-explanatory, and apparently if the premium is now paid or paid immediately they will reinstate the policy. However, I must point out that any future notice of cancellation will not permit the company to reinstate the policy, and I wish to stress the fact so that you will please make future payments on time. I am certain that you realize my position, and I have no choice in the matter, and of course feel that the matter rests in your hands in the future."

Mr. Witzen was an auditor of defendant and, by reason of the cancellation of the policy, it was necessary for him to audit some of the records of the plaintiff, particularly with reference to workmen's compensation insurance which was also carried by defendant and which was included in the notice of cancellation. With this purpose in mind Mr. Witzen called on Mr. Logback at the latter's Antonito office on November 30, 1961 and asked that Mr. Logback arrange an appointment for Mr. Witzen with the plaintiff at the plaintiff's Alamosa office. Thus Mr. Logback learned that the plaintiff had not paid the September installment and that cancellation had been effected. Both Mr. Witzen and Mr. Logback testified that Mr. Logback immediately telephoned the plaintiff, advising him that his automobile casualty policy was cancelled and that he was "running around without insurance,"; and that Mr. Logback urged upon him to come to Antonito the following day so that a "new policy" might be written.

The plaintiff did not contact Mr. Logback until the afternoon of December 4th, when he telephoned Mr. Logback and advised that plaintiff's wife was driving to Antonito with a check. The plaintiff's wife delivered to Mr. Logback a check payable to Logback Insurance Agency in the amount of $467.80, marked "Del Mar Co. In Full."

The jury answered an interrogatory to the effect that plaintiff's wife delivered the check prior to 6:30 p.m. The automobile accident which became the subject of this action occurred within an hour or so.

On December 4th or prior thereto the defendant transmitted a remittance to Del Mar in the amount of $561.36, representing the unearned premium upon the plaintiff's policy. This was received by Del Mar at its office in Baltimore, Maryland on December 5th.

Mr. Logback testified with respect to the plaintiff's check in the amount of $467.80, "I took this check and wrote a check of my own to United States Fidelity and

Guaranty Company because I don't accept money for Del Mar ... so I transmitted my own check to Denver and explained to them if they would reinstate this he would like to reinstate it." The defendant returned Mr. Logback's remittance for the reason that the defendant would not honor the reinstatement request.

Mr. Logback had no authority to reinstate policies, but he did have authority to bind a new policy, *i.e.*, he could assure a person that new insurance would be in force from the time of the assurance. On December 5th Mr. Logback called defendant's Denver office and obtained authority to bind a new policy for the plaintiff in order that the plaintiff would be insured if it eventually developed that the reinstatement would not be granted. The defendant issued a new policy dated December 5th.

The plaintiff testified that he did not know that he had granted Del Mar the authority to procure cancellation of the policy; that he did not know that the policy was cancelled until December 12th, 13th or 14th; that neither Mr. Logback nor Mr. Witzen told him that the insurance was cancelled prior to the accident; that Mr. Witzen had called upon him merely to make an annual audit of workmen's compensation; that he received notice on two occasions from Del Mar that he was delinquent; that he did not recall receiving any notices of cancellation or of Mr. Logback ever saying anything to him about cancellation; but that he would have no reason to doubt Mr. Logback's word as to notices Mr. Logback had sent to him.

The jury answered an interrogatory in effect that at the time plaintiff's check for $467.80 was delivered to Mr. Logback there was no agreement between him and the plaintiff that the policies would be reinstated as of October 9, 1961, the date of the notice of cancellation. Further, the jury found according to an answer to another interrogatory that, at the time the plaintiff telephoned Mr. Logback a few hours before the delivery of this

check, there was no agreement between them that a new policy of insurance was in effect as of that time. We have the impression from reading the record that there was no evidence to sustain a finding that the policies were reinstated. Be that as it may, the finding of the jury determined that the old policy was not reinstated and that the new policy was not in effect at the time of the accident.

The jury returned a verdict in favor of the plaintiff in the amount of $2909. This perforce would have to be predicated upon a conclusion that the policy never was cancelled. We agree with the trial court in its determination as a matter of law that the policy was cancelled and, therefore, judgment was correctly entered in favor of the defendant notwithstanding the verdict.

In answer to a further interrogatory the jury found that Del Mar was an agent of the defendant. Therefore, plaintiff argues, the cancellation was attempted by the defendant and could only be effected by strict compliance with the terms of the policy. The plaintiff then argues that the automobile casualty policy provided that the policy might be cancelled upon ten days written notice to the insured and that there was not compliance with this provision. *Angelo v. Traviglia*, 70 Ohio 2d 383, 155 N.E.2d 717 is to the contrary. Moreover, plaintiff did not effectively negate Mr. Logback's testimony that he wrote to the plaintiff on October 12th urging payment of the September installment and attaching a copy of the cancellation notice. Even if the policy's cancellation terms governed here (which he seriously doubt) and even assuming *arguendo* that this was the first notice received by the plaintiff, the cancellation would have been effective ten days following the receipt of the notice from Mr. Logback. See 3A *J. Appleman, Insurance Law and Practice* § 1815 at 126; and 96 A.L.R.2d 290.

Affirmance here, however, need not depend upon the foregoing statement. The plaintiff, by executing and delivering the promissory note gave Del Mar the au-

thority to procure the cancellation of the policies upon default *without* notice to the plaintiff, and the plaintiff is in no position to complain after Del Mar acted in accordance with that authority. *Chamberlain v. Employers' Liability Assur. Corporation,* 289 Mass. 412, 194 N.E. 310 is particularly in point and persuasive.

Judgment affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE HODGES concur.