306 So.2d 582 (1975)
Charles Thomas MARTIN and Mary O'Neal Martin, Plaintiffs,
v.
Walter Francis RITCHESON et al., Defendants,
GENERAL GUARANTEE INSURANCE COMPANY, etc., Third-Party-Plaintiffs,
George Mackoul, etc., et al., and Baker and Company, Florida, Etc., Third-Party-Defendants.
No. V-343.
District Court of Appeal of Florida, First District.
January 6, 1975.
Rehearing Denied February 11, 1975.
William F. Kaler, Sistrunk & Kaler, and Gerald R. Power, Jacksonville, for plaintiff, Charles Thomas Martin.
Thomas K. McKee, Jr., Lake City, for defendants, Walter Francis Ritcheson, and others.
Carl K. Staas, Boyd, Jenerett, Leemis & Staas, Jacksonville, for Gen. Guar. Ins. Co., third party plaintiff.
Herbert R. Kanning, Mathews, Osborne, Ehrlich, McNatt, Gobelman, & Cobb, Jacksonville, for George Mackoul; and Jeffrey Allen Tew, Tew, Tew & Murray, Miami, for Baker and Co., Florida, etc., third party defendants.
F.E. Steinmeyer, III, Folsom & Steinmeyer, Tallahassee, for amicus curiae.
BOYER, Acting Chief Judge.
We here consider a certified question from the Circuit Court of Duval County *583 pursuant to Rule 4.6 Florida Appellate Rules, the material portion of which provides as follows:
"a. When Certified. When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction."
For the factual basis of our consideration we are bound by the recitations of the certificate which, rather than attempt to paraphrase, we here quote in toto:
"STATEMENT OF FACTS
"1. The plaintiffs, Charles Thomas Martin and Mary O'Neal Martin, were involved in an automobile accident on March 28, 1971. At the time of the accident, the defendant, Walter Francis Ritcheson, was operating an automobile owned by Best Homes, Inc., a corporation. Suit was brought by the plaintiffs in this case against the defendant, Walter Francis Ritcheson, and Best Homes, Inc., a corporation, and General Guarantee Insurance Company, a corporation. There was an automobile liability insurance policy issued to Best Homes, Inc., by General Guarantee Insurance Company on the automobile being operated by Walter Francis Ritcheson at the time of the accident with the policy period from 10/17/70 to 10/17/71. The premiums for said liability policy were paid to the defendant, General Guarantee Insurance Company, by Baker and Company, Florida, a premium finance company, for the full policy period.
"2. There are disputed facts as to whether or not the premium finance company, Baker and Company, Florida, sent a ten-day notice of intent to cancel the policy on 3/1/71 and a notice of cancellation of the policy on 3/11/71 allegedly for failure of the insured Best Homes, Inc., to pay to Baker and Company monthly payments on the premium finance contract. It was stipulated by the parties that at no time during the policy period prior to the accident of March 28, 1971, which is the subject of the litigation, did the defendant insurance company, General Guarantee Insurance Company, send to its assured, Best Homes, Inc., a notice of cancellation of the automobile liability insurance policy on the automobile owned by Best Homes, Inc., and being operated by the defendant, Walter Francis Ritcheson, at the time of the accident.
"3. The issue of insurance coverage is being tried separate from the issues of liability and damage.
"Upon the foregoing facts, upon the Court's own motion, the Circuit Court of Duval County hereby certifies to the First District Court of Appeals of the State of Florida, pursuant to Rule 4.6, Florida Appellate Rules, for its review and determination the following question, to-wit:
"QUESTION
"IN ORDER THAT AN AUTOMOBILE LIABILITY INSURANCE POLICY BE EFFECTIVELY CANCELLED, IS THE INSURANCE COMPANY (INSURER) REQUIRED TO SEND TO ITS INSURED (BEST HOMES, INC.) A NOTICE OF CANCELLATION IN ACCORDANCE WITH THE REQUIREMENTS OF FLORIDA STATUTES 627.728 REGARDLESS OF WHETHER OR NOT THE PREMIUM FINANCE COMPANY HAD SENT TO THE INSURED A TEN-DAYS' NOTICE OF INTENT TO CANCEL AND A NOTICE OF CANCELLATION OF THE POLICY PURSUANT TO FLORIDA STATUTES, SECTION 627.848?

*584 "The Court further certifies that the aforesaid question or proposition of law is determinative of the cause and is without controlling precedent in this State and that instruction from the Court will facilitate the proper disposition of the cause."
The two statutes referred to in the certified question provide in material part as follows:
"627.728 Cancellations; nonrenewals. (1) As used in this section:
* * * * * *
"(c) `Nonpayment of premium' means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit.
"(2) No notice of cancellation of a policy shall be effective unless it is based on one or more of the following grounds:
"(a) Nonpayment of premium;
* * * * * *
"(3) (a) No notice of cancellation of a policy to which this section applies shall be effective unless mailed or delivered by the insurer to the named insured and to the named insured's insurance agent at least forty-five days prior to the effective date of cancellation, except that when cancellation is for nonpayment of premium, at least ten days' notice of cancellation accompanied by the reason therefor shall be given. No notice of cancellation of a policy to which this section applies shall be effective unless the reason or reasons for cancellation accompany the notice of cancellation.
"(b) Nothing in this subsection (3) shall apply to nonrenewal.
* * *" (Emphasis added)
"627.848 Cancellation of insurance contract upon default. When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled unless such cancellation is effectuated in accordance with the following provisions:

"(1) Not less than ten days written notice be served upon the insured or insureds shown on the premium finance agreement of the intent of the premium finance company to cancel his or their insurance contract or contracts unless the defaulted installment payment is received within ten days.
"(2) After expiration of such period, the premium finance company shall mail the insurer a request for cancellation, specifying the effective date of such cancellation, mailing a copy to the insured at his last known address as shown on the premium finance agreement.
* * * * * *
"(4) Upon receipt of a copy of such cancellation notice by the insurer or insurers, the insurance contract shall be cancelled with the same force and effect as if the aforesaid notice of cancellation had been submitted by the insured himself, without requiring the return of the insurance contract or contracts.
"(5) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel his insurance contract unless he or the insurer first satisfied such restrictions by giving a prescribed notice to a governmental agency, the insurance carrier, a mortgagee, an individual, or person designated to receive such notice for said governmental agency, insurance carrier, or individual shall apply where cancellation is effected under the provisions of this section. The insurer, in accordance with said prescribed notice where it is required to give such notice in behalf of itself or the insured, shall give notice to such governmental agency, person, mortgagee *585 or individual; and it shall determine and calculate the effective date of cancellation from the day it receives the copy of the notice of cancellation from the premium finance company.
"(6) Whenever an insurance contract is cancelled in accordance with this section, the insurer shall promptly return whatever gross unearned premiums are due under the contract to the premium finance company effecting the cancellation for the benefit of the insured or insureds." (Emphasis added)
It will be noted that F.S. § 627.848, by its very terms, is applicable only "when a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement". There is no recitation in either the facts or the certified question that the premium finance agreement sub judice contains a power of attorney or other authority enabling the premium finance company to cancel. Obviously, if it did not then the certified question must without further adieu be answered in the affirmative. However, the briefs of the parties, and the statements of the attorneys at oral argument, assumed the existence of a power of attorney, thereby bring Florida Statute § 627.848 into play, and for the purpose of answering the certified question we will make the same assumption here.
The attorneys for the insurance company and amicus curiae argue with convincing logic that the above quoted provisions of F.S. § 627.728 are not here applicable because the premium finance company, by virtue of the power of attorney, is the attorney in fact for the insured and stands in the place of the insured and that to hold that an insurer must send the requisite notice to the insured after the insured itself has requested cancellation would require a useless act. We would be inclined to agree were it not for the fact that the statute itself clearly and specifically provides to the contrary. It is noted that F.S. § 627.728(1)(c) defines "nonpayment of premium" to mean failure of the named insured to discharge any of his obligations in connection with the payment of premiums whether the premium is payable directly to the insurer or its agent "or indirectly under any premium finance plan". It is apparent therefore that the legislature intended the provisions of F.S. § 627.728 be applicable in instances wherein the named insured failed to make premium payments under a premium finance plan. The inescapable conclusion follows that in instances wherein there is a default in the payment of insurance premiums under a premium finance plan both statutes (F.S. § 627.728 and F.S. § 627.848) must be complied with.
Inasmuch as the provisions of the two statutes are neither ambiguous nor in conflict there is no basis for judicial construction. F.S. § 627.848 delineates the duties and responsibilities of a premium finance company incident to cancellation of an insurance contract upon default. Subsection (1) of that statute requires a ten-day written notice of the "intent" of the premium finance company to cancel. Subsection (2) provides for the mailing by the premium finance company of a "request for cancellation" to the insurer. It is clear that the instrument there so provided for is a request that the policy be cancelled and is not a notice of cancellation. This interpretation is fortified by the provisions of Subsection (5) which requires that "all statutory * * * restrictions providing that the insured may not cancel his insurance contract unless he or the insurer first satisfies such restrictions by giving a prescribed notice to * * * an individual * * * shall apply where cancellation is effected under the provisions of this section."
The provisions of F.S. § 627.728 describe the manner in which a policy is cancelled by an insurer upon receipt of the "request for cancellation" as provided in F.S. § 627.848(2). Subsection (3)(a) clearly and unequivocally requires, as a condition *586 precedent to effective cancellation, a notice "mailed or delivered by the insurer to the named insured".
The insurance company cites in its brief 18 Fla.Jur., Insurance, § 537, and quotes therefrom the following:
"If the premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, cancellation of such contract or contracts is effectuated by following the procedure set forth in the statute * * *".
We are cited to no Florida case supporting the above quoted statement and our independent research has revealed none. Our interpretation of the statutory provisions, as above recited, lead to a different conclusion.
The insurer further cites for our consideration Chamberlain v. Employers' Liability Assurance Corporation et al., 1935, 289 Mass. 412, 194 N.E. 310, and Hayes v. Hartford Accident and Indemnity Company, 1968, 274 N.C. 73, 161 S.E.2d 552; and Grant v. State Farm Mutual Automobile Insurance Company, 1968, 1 N.C. App. 76, 159 S.E.2d 368, each of which cases holds that the premium finance company is the attorney in fact for the insured and that accordingly a cancellation by the premium finance company is the act of the insured, rendering the provisions relating to cancellation by the insurer not applicable. As recited in an earlier portion of this opinion, that logic is very persuasive and would no doubt prevail but for the specific provision of F.S. § 627.728(1)(c) by which "nonpayment of premium" is defined to include default in payment under the premium finance plan and the further provisions of that statute which clearly requires notice by the insurer prior to cancellation resulting from nonpayment of premium.
Although neither the policy nor the premium finance agreement are in the record before us, resulting in us being ignorant of the provisions thereof, it really makes no difference because the law of Florida is clear that statutory provisions prevail over contrary policy provisions relating to cancellation and if the applicable statutory provisions are not adhered to any purported cancellation is ineffective. (Hunsucker v. Arrow Insurance, Fla.App. 1st 1971, 242 So.2d 205) In that case it is said:
"Insurance concerning the operation of automobiles, a species of chattel that has been termed a dangerous instrumentality by the Supreme Court of Florida, has increasingly been a subject matter of legislative concern. From a practical standpoint, an owner or operator must be financially responsible or insured in order to own or operate a motor vehicle. The cited statutory provision directs the casualty insurance company when it elects to cancel a policy of insurance to do the following. (a) Give 20 days' notice. (b) Give the reason for cancelling or in the alternative advise the insured in the notice of cancellation, that upon request by him not less than 10 days prior to the effective date of cancellation, it will specify the reason for such cancellation. (c) Advise the insured in the notice of cancellation that he is permitted by law to appeal the cancellation. Thus, the legislative scheme is clearly designed to require that the insurance company adequately apprise the insured of his rights of recourse prior to the cancellation becoming effective." (242 So.2d at page 207; footnote deleted)
Although the question certified to us is novel in this jurisdiction, we are not without precedent. The Court of Appeals of Georgia had occasion in Garber v. American Mutual Fire Insurance Company, Dt. App.Ga.3rd, 1974, 131 Ga. App. 366, 206 S.E.2d 86, to consider a factually similar case involving the same premium finance company as involved sub judice and statutory provisions quite similar to F.S. § 627.728 *587 and F.S. § 627.848. There the court said:
"The attorney in fact was required to abide by the laws of Georgia irrespective of any provision to the contrary in the power of attorney. One may not circumvent the mandate of the public statutes under the guise of empowering an agent to do an otherwise illegal act. Code §§ 20-501, 20-504. In Screven Oil Co. v. Jarrell, 171 Ga. 837(1), 157 S.E. 96, it is held that: `No agreement between the parties can affect the execution or enforcement of a law passed by the State, unless it is for some reason unconstitutional and void.' Here, the insurer seems to contend that it had a right to ignore the plain terms of Code Ann. §§ 84-5312 and 56-2430.1 (requiring 10 days notice of cancellation to be given the insured) by urging that the power of attorney authorized the ignoring of and noncompliance of said statutes. But in this contention, it is in error. The same law that binds the principal, likewise binds his agent. As to insurance policies it has been held time and again that the statute, not the policy, controls. See Gulf American Fire, etc., Co. v. McNeal, 115 Ga. App. 286, 292, 154 S.E.2d 411; Nelson v. Southern Guaranty Ins. Co., 221 Ga. 804, 807, 147 S.E.2d 424; Thames v. Piedmont Life Ins. Co., 128 Ga. App. 630, 632, 197 S.E.2d 412." (206 S.E.2d at pages 87 and 88)
Although the above cited case (Garber v. American Mutual Fire Assurance Company) is distinguishable by minor factual differences, the quoted portion is applicable here.
The certified question is answered in the affirmative. In order that an automobile liability insurance policy be effectively cancelled, the insurer is required to send to its insured a notice of cancellation in accordance with the requirements of F.S. § 627.728, regardless of whether or not a premium finance company has sent to the insured a notice of intent to cancel or notice of cancellation pursuant to F.S. § 627.848.
We have not overlooked Brinkley v. Prudence Mutual Casualty Company, Fla. App.3rd 1967, 199 So.2d 490. The principles there involved simply are not applicable sub judice.
JOHNSON, J., and SPECTOR, SAM, Associate Judge, Retired, concur.