528 F.Supp. 709 (1981)
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY
v.
SAFEGUARD MUTUAL INSURANCE COMPANY
and
Sterling Premium Finance Company, Inc.
Civ. A. No. 79-2371.
United States District Court, E. D. Pennsylvania.
December 28, 1981.
Walter S. Jenkins, McWilliams & Sweeney, Philadelphia, Pa., for plaintiff.
Barry J. Goldstein, Philadelphia, Pa., for Safeguard Mut. Ins. Co.
No appearance entered for Sterling.

OPINION
DITTER, District Judge.
This is an action for a declaratory judgment between two insurance companies and involves an automobile liability policy. The policy was purportedly cancelled by the insured's agent acting under a valid power of attorney obtained from the insured as part of a plan for the financing of premium payments. By statute, Pennsylvania provides that if an insurer cancels an automobile policy for the nonpayment of premiums, 15 days notice to the insured is necessary. The question here is whether that same notice is mandated when the policy is cancelled by the insured's finance company acting for him. For the reasons which follow, I conclude that such notice is not required and therefore will grant defendant's motion for summary judgment.
On March 9, 1978, Joseph Parker filed an application with the A & A Insurance Agency for no-fault motor vehicle insurance. A & A secured a policy for Parker from the defendant, Safeguard Mutual Insurance Company, providing the benefits he wanted. Because Safeguard required full payment of the policy premium, Parker entered into an agreement with the co-defendant, Sterling Premium Finance Company, Inc. In return for a down payment of *710 $157 and Parker's agreement to make eight payments by the tenth of each succeeding month, Sterling paid Parker's premium and the policy was duly issued.
Under the heading, "Cancellation," Safeguard's policy stated:
You may cancel this policy or any of its coverages by mailing written notice to us of the future date of cancellation you desire. Premium refund, if any due, will be made as soon as practicable after the date of cancellation.
One of the provisions in Parker's contract with Sterling provided:
Insured hereby appoints Sterling as its attorney-in-fact to cancel any or all of the aforementioned policies, and to receive and receipt for any unearned or return premium, and loss payment, either to execute any check or draft therefore in Insured's name or to direct the insurance company to make said check or draft payable to Sterling.[1]
Parker began to make payments under the schedule established by Sterling. However, he failed to make his July payment and on July 26, 1978, Sterling notified him that his payment was overdue and that his policy would be cancelled by August 4, 1978, unless payment was received before that date.
Apparently in response to this notice, Parker forwarded Sterling a check dated simply "Aug. 1978." The check was not endorsed until August 21, 1978, and, unfortunately, five days later Parker's car collided with another vehicle, whose occupants were insured by plaintiff, Prudential Property & Casualty Insurance Company. On August 28, 1978, Sterling acknowledged that it had received payment from Parker on August 21, 1978, but informed him that Safeguard had cancelled his policy as of July 26, 1978. Later Safeguard responded to notice from Parker about the accident by stating that it had cancelled his policy on August 4, 1978. This same information was given to the driver and passengers of the other vehicle who then made claim upon Prudential under the uninsured motorist provisions of its policy. The present action followed, plaintiff seeking a declaration that the policy issued to Parker by Safeguard was in force at the time of the accident because Safeguard had wrongfully cancelled Parker's policy, thus exposing plaintiff to potential liability.
The resolution of the issue involved in this case depends upon the application of the cancellation provisions of the Pennsylvania automobile insurance statute, Pa. Stat.Ann. tit. 40 § 1008.1-.10 (1968). The relevant portion of the Act provides:
No cancellation or refusal to renew by an insurer of a policy of automobile insurance shall be effective unless the insurer shall deliver or mail, to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew. (emphasis added).
Pa.Stat.Ann. tit. 40 § 1008.5 (1968). The plaintiff asserts that Parker's policy was not cancelled in conformance with the notice requirement of this section,[2] the cancellation was therefore ineffective, and the policy remained in force at the time of the accident. Pointing to the language, "No cancellation ... by an insurer ... shall be effective ...," Safeguard argues that the notice provisions have no application to these facts because it did not cancel Par *711 ker's policy. Rather, Safeguard maintains, Parker, acting through his duly authorized attorney-in-fact, cancelled the policy himself.
The argument propounded by the defendant has been accepted by several state courts in construing their particular auto insurance cancellation statutes.[3] Although I am not bound to follow these cases, I find them persuasive due to the similarity of the particular statutory provisions of each state and the unambiguous language of the Pennsylvania statute.
When Parker signed the premium finance agreement with Sterling, he appointed Sterling his attorney-in-fact, inter alia, to cancel the insurance policy with Safeguard. I cannot interpret the unambiguous language in the power of attorney any other way. Similarly, the plain language of the insurance policy grants to the insured the power to cancel it upon written notice to the insurer. Thus, Sterling merely was acting in accordance with its authority as conferred in the power of attorney and the terms of the insurance policy. There is no contention that Sterling also was acting for Safeguard when it requested the cancellation of Parker's policy. There was no principal-agent relationship between Safeguard and Sterling in this case nor in any other. See Deposition of Malcolm H. Waldron, Jr., counsel to Safeguard, at 2-3.
Plaintiff's assertion that Parker's policy was cancelled without proper notice as required in Pa.Stat.Ann. tit. 40 § 1008.5 cannot be sustained. Section 1008.5 requires that the insurer give fifteen days notice to the insured when it cancels or refuses to renew the insured's policy. Pa.Stat.Ann. tit. 40 § 1008.5. The clear and unambiguous language of the statute states that the notice requirement is applicable only when the cancellation is effected at the initiative of the insurer. That is simply not the case here. Surely if Parker had sold his car and, believing he had no further reason for liability insurance, cancelled the policy himself, the plaintiff's contention that he was entitled to notice of what he himself had done would not be very persuasive. The fact that the power to cancel was exercised by Parker's attorney-in-fact does not enhance plaintiff's argument.
My conclusion that the notice requirement of § 1008.5 is inapplicable is supported by § 1008.6(2), which states:
Nothing in this act shall apply:
(2) If the named insured has demonstrated by some overt action to the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed;
Pa.Stat.Ann. tit. 40 § 1008.6(2) (1978) When Sterling instructed Safeguard to cancel Parker's policy, it was acting for him. His instruction, albeit given by Sterling, certainly was "overt action to the insurer" which suspended operation of the notice provision of § 1008.5.[4] In fact, § 1008.6(2) is directed specifically to this situation, i.e., cancellation of an insurance policy at the behest of the insured or his agent.
As I noted earlier, there are numerous decisions from various state courts which *712 support my conclusion in this case. See note 3 supra. The two cases requiring the statutory notice to the insured in this situation are easily distinguishable. In Garber v. American Mutual Fire Insurance Co., 131 Ga.App. 366, 206 S.E.2d 86 (1974), cancellation of a policy by a finance company pursuant to a power of attorney was held ineffective because the finance company failed to give the insured ten days notice of intent to cancel as required by Georgia statute. Garber, supra, 206 S.E.2d at 87. The majority in Garber based its conclusion on two Georgia statutes, one requiring notice to the insured when the finance company cancels the policy and another requiring notice when the insurer initiates cancellation. However, the concurring justice noted that the statute requiring the insurer to give notice of cancellation to the insured really was inapplicable because the statute which required the finance company to give notice of its intent to cancel addressed directly the issue under consideration. Garber, supra at 88 (Eberhardt, P.J., specially concurring). See Ga.Code Ann. § 56-2430.1 (1971). Garber is distinguishable from the case at bar because in Pennsylvania, there is no statute specifically requiring notice to the insured when the finance company cancels the policy pursuant to a power of attorney.
In Martin v. Ritcheson, Fla.App., 306 So.2d 582 (1975), the court applied an insurer cancellation notice statute where the finance company cancelled the policy pursuant to a power of attorney. Noting that the definition of "non-payment" in the statute included failure to pay a premium finance company, the court reasoned that the legislature intended the statutory notice of cancellation from the insurer to be given even though the finance company was acting for the insured when it initiated the cancellation. Martin, supra at 585-86. See Fla.Stat.Ann. §§ 627.728(1)(c) (West). This argument is not supported by Florida law as there is a specific statute requiring notice of intent to cancel to the insured when a finance company cancels pursuant to a power of attorney. Fla.Stat.Ann. § 627.848 (West). See Appleman, Insurance Law and Practice § 5012 n.1 (1981) (criticizing result in Martin v. Ritcheson and noting that specific statute applied). Highlighting certain language in the Florida statute, the Martin court further supported its result by drawing a distinction between the finance company's sending notice of cancellation to the insurer and the finance company's merely requesting the insurer to cancel the policy. Martin, supra, at 585. Not only does this argument elevate form over substance, it ignores the disjunctive language in the Florida statute. Fla.Stat.Ann. § 627.848(2)(5) (West).
The case before me simply presents a problem of agency law. Sterling acted within the scope of the power Parker granted it and therefore, Sterling's actions are deemed to be Parker's. Because it was the insured rather than the insurer who initiated the cancellation, the statutory notice provisions relating to cancellation by an insurer are not applicable. There being no genuine issue as to any material fact, summary judgment must be granted in favor of the defendant, Safeguard.
NOTES
[1] Plaintiff's claim against Sterling has been settled by agreement of the parties.
[2] The notice requirements of this section are set forth below.

Such notice shall
(1) ...
(2) State the date, not less than thirty days after the date of such mailing or delivering on which such cancellation ... shall become effective, except that such effective date may be fifteen days from the date of mailing or delivery when it is being cancelled ... for ... [non-payment of premium]. [Non-payment of premium" is defined to mean failure of the insured to pay a premium or an installment when due, whether directly to the insurer or indirectly under any premium finance plan. § 1008.1(4).]
(3) ...
(4) ...
(5) ...
(6) ...
Pa.Stat.Ann. tit. 40 § 1008.5 (1968).
[3] See Liguori v. Aetna Casualty & Surety Co., 384 A.2d 308 (R.I.1978); Davis v. Roddie, 113 N.J.Super. 457, 274 A.2d 297 (1971); Lowe v. United States Fidelity & Guaranty Co., 171 Colo. 215, 466 P.2d 73 (1970); Ingram v. Nationwide Mut. Ins. Co., 5 N.C.App. 255, 168 S.E.2d 224 (1969); Hayes v. Hartford Accident & Indemnity Co., 274 N.C. 73, 161 S.E.2d 552 (1968); Sweers v. Malloy, 28 A.D.2d 955, 281 N.Y.S.2d 693 (1967); Daniels v. Nationwide Mutual Insurance Co., 258 N.C. 660, 129 S.E.2d 314 (1963); Stone v. Travellers Insurance Co., 40 Misc.2d 164, 242 N.Y.S.2d 583 (1962); Chamberlain v. Employers' Liability Assur. Corp., 289 Mass. 412, 194 N.E. 310 (1935). But see, Martin v. Ritcheson, Fla.App., 306 So.2d 582 (1975); Garber v. American Mutual Fire Ins. Co., 131 Ga.App. 366, 206 S.E.2d 86 (1974).
[4] Plaintiff suggests that mere default is not overt action. It is true that a regulation issued by the insurance department of Pennsylvania states that mere nonpayment of premium by the insured will not be considered overt action within the provisions of § 1008.6(2). 31 Pa.Admin.Code § 61.10(b). The regulation does not alter the result. The plain language of § 1008.6(2) refers to overt action directed "to the insurer or its agent." Sterling's notice was such action. Section 1008.6(2) does not purport to control matters between the insured and his agent.