## Donegal Mutual Insurance Co. v. Progressive Casualty Insurance Co.

82

*Edward J. Coyle,* for plaintiff.

*Jered L. Hock,* for defendant Progressive Casualty Insurance Co.

PEREZOUS, *J.,* June 5, 1990 — On or about December 16, 1987, plaintiff Donegal Mutual Insurance Company commenced a declaratory-judgment action seeking, inter alia, a decree that defendant Progressive Casualty Insurance Company is obliged to assume the defense of or provide insurance coverage to defendant Deborah Hart. An answer with new matter was filed by Progressive on or about June 23, 1988. Plaintiff filed a reply to the new matter. On or about September 7, 1988, plaintiff filed an amendment to the declaratory judgment complaint. Progressive responded with an answer and new matter filed on or about March 29, 1989. Subsequently, the parties engaged in discovery. On November 15, 1989, Progressive filed a motion for summary judgment which is currently before this court.

This suit is a declaratory-judgment action involving an automobile insurance coverage dispute arising out of a single-vehicle accident occurring on May 28, 1984. On this date, Hart was involved in an accident when the vehicle she was operating left the roadway and struck a tree. Defendants David Hart, Cheryl Foley and Shannon Foley were allegedly passengers in the vehicle. As a result of this accident, Cheryl Foley was rendered a quadriplegic. David Hart and Shannon Foley also suffered injuries.

At the time of the collision, David Hart was insured under a policy issued by plaintiff Donegal. He is alleged to have grabbed the steering wheel of the vehicle immediately prior to it having collided

with a tree. Subsequently, coverage for both Deborah and David Hart was requested under his Donegal policy.

It is Donegal's position that Deborah Hart was an insured of Progressive at the time of her accident and that it is Progressive which has the primary obligation to defend and indemnify her. While Progressive admits that it had insured Hart prior to the time of her accident, it specifically denies that this policy was in effect on the day of the accident, May 28, 1984. Progressive argues that Hart's policy had been canceled prior thereto due to non-payment of premiums. Donegal maintains that Hart's policy was not properly canceled and that it was in full force and effect at the time of the accident. This declaratory-judgment action was commenced in order to address this disputed issue of coverage.

The factual circumstances surrounding cancellation of the automobile insurance policy issued by Progressive are not in dispute. On or about November 22, 1983, Hart entered into a "premium finance agreement" with Progressive Premium Budget Inc. PPB is an Ohio corporation which provides premium financing for Progressive Casualty insureds and is not a party to this action. Pursuant to the terms of the agreement, PPB agreed to finance the full amount of Hart's automobile insurance premium in exchange for a cash down-payment and a promise to make nine monthly installment payments to PPB.

According to the terms of the premium finance agreement, PPB was granted a power of attorney by Hart and had the authority to cancel insurance financed by the agreement if payment of any installment was not made according to schedule. Upon cancellation, the agreement provided that any unearned premiums would be applied against the

outstanding balance and any credit balance after cancellation would be refunded.

Hart failed to timely forward her first installment payment to PPB and on January 4, 1988 Progressive issued a courtesy "notice of cancellation due to non-payment of premium" advising Hart that cancellation of the policy would take effect on January 20, 1984 if payment was not received by PPB on or before the cancellation date. Sometime between January 4, 1984 and January 20, 1984, Hart forwarded her installment payment to PPB and a "notice of reinstatement" was issued which also notified her that the second installment payment was due on or before January 22, 1984.

Once again, Hart failed to timely make her second installment payment and on January 31, 1984, Progressive issued a second courtesy "notice of cancellation due to non-payment of premium" advising Hart that cancellation of the policy would take effect on February 16, 1984 if payment was not received by PPB on or before the cancellation date. Progressive contends that they were not required to provide Hart with any notice of cancellation given the terms of the premium finance agreement and that the notices forwarded to Hart were merely courtesy notices. It is Progressive's contention that the agreement provides that cancellation can be effectuated by PPB, as authorized agent of Hart, if any installment is not paid within 15 days after its due date.

Hart failed to forward her second installment payment on or before February 16, 1984 and the policy was canceled with cancellation effective February 16, 1984. Progressive claims that since cancellation ·was effectuated· by Hart's authorized agent, they are not required to comply with the

statutory and regulatory requirements concerning cancellation notices.

Subsequent to cancellation, PPB forwarded three refund checks to Hart and she endorsed and cashed each of the checks prior to the accident. Moreover, Progressive was never notified, either by Hart or the insurance commission, that Hart sought review of the cancellation or challenged the cancellation in any manner whatsoever. Finally, it is Progressive's contention that cancellation was not done at the initiative of Progressive, and therefore Progressive was not required to issue cancellation notices, but did so only as a matter of courtesy to Hart.

## DISCUSSION

In deciding the instant motion for summary judgment, this court is bound by the provisions of rule 1035 of the Pennsylvania Rules of Civil Procedure which provides that summary judgment can be granted only where "there is no genuine issue as to any material fact." Pa.R.C.P. 1035(b). The burden of proving that there is no genuine issue of material fact is on the moving party, and all doubts are to be resolved against him. *Helinek v. Helinek*, 337 Pa. Super. 497, 487 A.2d 369 (1985). Moreover, summary judgment "should only be granted in the clearest of cases." *Kotwasinski v. Rasner*, 436 Pa. 32, 41, 258 A.2d 865, 869 (1969). Within this context, it must be recognized that rule 1035 states that summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Sergi v. School District of the City of Pittsburgh*, 28 Pa. Commw. 576, 368 A.2d 1359 (1977).

The first issue this court must decide is whether an insurer must comply with the statutory and regulatory requirements concerning cancellation notices when an automobile insurance policy is canceled by an insurance premium finance company pursuant to the terms of an insurance premium finance agreement.

Hart voluntarily entered into a premium finance agreement with PPB whereby PPB agreed to pay her automobile insurance policy premium in return for a cash down-payment and a promise to make monthly installment payments. There is no dispute that Hart failed to timely forward her installment payments and the insurance policy was canceled. In asserting that the cancellation was ineffective because Progressive failed to comply with the statutory and regulatory requirements concerning cancellation notices, Donegal ignores the express provisions of the premium finance agreement as well as the statutory law applicable.

The statutory requirements concerning cancellation notices are set forth in the Pennsylvania Automobile Insurance Statute, 40 P.S. §1008.1 et seq. More specifically, 40 P.S. §1008.5 proscribes the manner in which certain parties may cancel and also outlines the contents of the cancellation notice those parties must provide. Prior to enumerating the specific requirements, the statute states:

"No cancellation or refusal to renew *by an insurer* of a policy of automobile insurance shall be effective unless the insurer shall deliver or mail, to the named insured at the address shown on the policy a written notice of the cancellation or refusal to renew." (emphasis supplied)

This provision is significant because it expressly delineates that the notice requirements contained in the statute apply only to insurers. An insurer is

defined as "any insurance company, association or exchange authorized to transact the business of automobile insurance in the Commonwealth of Pennsylvania." 40 P.S. §1008.1(3).

In the present case, the statute is entirely inapplicable because the policy was canceled by the premium finance company. Pursuant to the power of attorney contained in the Premium Finance Agreement, PPB, as authorized agent of the insured, notified Progressive that the policy was canceled due to the insured's failure to timely forward the installment payment within 15 days after it was due. PPB is not an "insurer" as defined in 40 P.S. §1008.1 and was not required to comply with the formal notice requirements. Moreover, since the policy was canceled by the insured's agent acting under a valid power of attorney obtained from the insured as part of a plan for financing premium payment, Progressive was not required to comply with the statutory notice requirements. *Prudential Property and Casualty Insurance Company v. Safeguard Mutual Insurance Company,* 528 F.Supp. 709 (E.D. Pa. 1981).

*Safeguard* involved a declaratory judgment action between two insurance companies concerning the propriety of the defendant's cancellation of an automobile liability policy and its facts are virtually indistinguishable from the present case. In *Safeguard,* the underlying insured had entered into a premium finance agreement whereby, in return for a down payment and a promise to make monthly installments, the finance company paid the insured's automobile insurance premium and a policy was issued by defendant Safeguard. The premium finance agreement provided that the insured appointed the finance company as its attorney-in-fact to cancel any insurance and to receive and refund

any unearned premiums. Subsequently, the insured failed to timely forward an installment payment and the policy was canceled. After cancellation, the insured was involved in a collision. The driver and passenger of the other vehicle then made a claim for uninsured-motorist benefits from Prudential and Prudential filed suit seeking a declaration that the policy issued by Safeguard was in force at the time of the accident because Safeguard had wrongfully canceled the policy. Prudential asserted that the insurance company's failure to comply with the cancellation provisions of the Pennsylvania Automobile Insurance Statute, 40 P.S. §1008.1-10, rendered the cancellation ineffective.

The court summarily rejected the plaintiff's argument that the cancellation provisions of the statute were applicable in this instance and found that the notice provisions had no application because the insurer did not cancel the policy. Rather, the insured, acting through his duly authorized attorney-in-fact, canceled the policy himself. The court stated:

"Plaintiff's assertion that [the insured's] policy was canceled without proper notice as required in 40 P.S. §1008.5 cannot be sustained. Section 1008.5 requires that the insurer give 15 days notice to the insured when it cancels or refuses to renew the insured's policy. 40 P.S. §1008.5. *The clear and unambiguous language of this statute states that the notice requirement is applicable only when the cancellation is effected at the initiative of the insurer.* That is simply not the case here . . . the fact that the power to cancel was exercised by [the insured's] attorney-in-fact does not enhance plaintiff's argument." *Id.* at 711. (emphasis supplied)

Progressive submits that *Safeguard* is controlling in the instant action. Since the Progressive policy

was canceled by the insured acting through PPB, her authorized agent, the cancellation provisions of the Pennsylvania Automobile Insurance Statute are inapplicable.

The argument propounded by Progressive has been accepted by several state courts in construing their particular auto insurance cancellation statutes.[1] Although this court is not bound to follow these cases, we find them persuasive due to the similarity of the particular statutory provisions of each state with the unambiguous language of the Pennsylvania statute.

This argument is also supported by the express provisions of the Insurance Premium Finance Company Act, 40 P.S. §3301 et seq. While the Insurance Premium Finance Company Act was not in effect on the day of the accident involved in this case, its provisions provide some guidance as to the insurer's responsibility where insurance is secured through a premium finance agreement. The act specifically applies to insurance premium finance companies and sets forth procedures to be followed by the company when cancellation is effectuated under a premium finance agreement containing a power of

---

1. See *Liguori v. Aetna Casualty and Surety Co.,* 384 A.2d 308 (R.I. 1978); *Davis v. Roddie,* 113 N.J. Super. 457, 274 A.2d 297 (1971); *Lowe v. United States Fidelity and Guaranty Co.,* 171 Colo. 215, 466 P.2d 73 (1970); *Ingram v. Nationwide Mutual Insurance Co.,* 5 N.C. App. 255, 168 S.E.2d 224 (1969); *Hayes v. Hartford Accident and Indemnity Co.,* 274 N.C. 73, 161 S.E.2d 552 (1968); *Sweers v. Malloy,* 28 A.D.2d 955, 281 N.Y.S.2d 693 (1967); *Daniels v. Nationwide Mutual Insurance Co.,* 258 N.C. 660, 129 S.E.2d 314 (1963); *Stone v. Travelers Insurance Co.,* 40 Misc.2d 164, 242 N.Y.S.2d 583 (1962); *Chamberlain v. Employers Liability Assur. Corp.,* 289 Mass. 412, 194 N.E. 310 (1935). But see, *Martin v. Ritcheson,* 306 So.2d 582 (Fla. App. 1975); *Garber v. American Mutual Fire Insurance Co.,* 131 Ga. App. 366, 206 S.E.2d 86 (1974).

attorney. More importantly, 40 P.S. §3310(d) provides "the insurer shall not be required to send the insured any notice of cancellation when the insurance policy is canceled by an insurance premium finance company pursuant to the terms of this section." The above-cited provision amply illustrates defendant's contention that the statutory and regulatory provisions concerning cancellation of an automobile insurance policy are inapplicable when cancellation is effectuated by an insurance premium finance company. As such, plaintiff's assertion that the policy issued to Hart by Progressive was in force on the date of this accident due to Progressive's failure to comply with the statutory requirements is entirely without merit.

Assuming arguendo that the Pennsylvania Automobile Insurance Statute, 40 P.S. §1008.1-10, is applicable, it is this court's view that Progressive's actions were entirely in accordance with the provisions. Title 40 P.S. §1008.6(2) provides that the notice requirements set forth in section 1008.5 are inapplicable "if the named insured has demonstrated by some overt action to the insurer or its agent that he wishes the policy to be canceled or that he does not wish the policy to be renewed."

In *Federal Kemper Insurance Company v. Commonwealth Insurance Department,* 509 Pa. 1, 500 A.2d 796 (1985), the plaintiff was issued an automobile policy for a six-month period. Prior to expiration, the carrier sent out a premium notice for coverage during the next six months. The insured received the notice but did not forward his premium. After expiration of the policy, the carrier sent a second notice which stated that if payment was made by a certain date, coverage would be retroactive to the original expiration date. Once again, the

insured ignored this notice and did not pay the premium. Coverage was discontinued and the carrier sent a third notice advising the insured that if he paid the outstanding premium, the policy would be reinstated within one day after payment, without retroactive coverage. Subsequently the insured was involved in an accident and attempted to tender the premium, seeking retroactive coverage. The carrier refused and the insured filed for review by the Insurance Commission claiming that the carrier had failed to comply with 40 P.S. §1008.5 concerning cancellation and non-renewal notices. The insurance commissioner held for the insured and the Commonwealth Court affirmed. On appeal, the Pennsylvania Supreme Court held that the insurer's acts were proper in all respects and the carrier was not required to issue a cancellation notice or notice of non-renewal because the insured effectively canceled the policy by "overt acts" under 40 P.S. §1008.6(2) when he failed to pay the premium despite knowledge that it was due. The court found that the insured's knowing refusal to pay an overdue premium constitutes an overt act, thereby relieving the insurer of its obligation to issue any cancellation notice or notice of non-renewal.

The present case is substantially similar to *Federal Kemper* in that defendant Hart's conduct, in authorizing PPB to cancel her policy if her premium was not paid, is sufficient to evidence her intent to cancel, thereby rendering the notice requirement inapplicable. Prior to cancellation of the policy at issue, PPB advised defendant that the policy would be canceled if the premium was not forwarded within 15 days. Plaintiff does not deny that Hart received this notice, nor does it deny that she failed

to forward her premium payment despite knowledge that it was due.

As in *Federal Kemper,* the insured's knowing refusal to make her installment payment constitutes an "overt act." Not only did Hart fail to make her payment after being notified that it was overdue, but in addition she cashed the three refund checks issued by PPB representing a refund pursuant to provisions of the premium finance agreement. Hart cashed these checks and did not at any time challenge the cancellation. These facts are sufficient to amply illustrate Hart's intent to cancel the policy, so that even if the statute were applicable in this case, Progressive was not required to issue any cancellation notice.

When PPB instructed Progressive to cancel Hart's policy, it was acting for her. Her instruction, albeit given by PPB, certainly was "overt action to the insurer" which suspended operation of the notice provision of section 1008.5.[2] In fact, section 1008.6(2) is directed specifically to this situation, i.e., cancellation of an insurance policy at the behest of the insured or his agent. *Prudential Property and Casualty Insurance Company v. Safeguard Mutual Insurance Company, supra,* at 711.

This case presents an issue of agency law. PPB was acting within the scope of the power Hart

---

2. Donegal suggests that mere default is not overt action. Indeed, the Insurance Department of Pennsylvania has issued a regulation to this effect which states that mere non-payment of a premium by the insured will not be considered overt action within the provisions of section 1008.6(2). 31 Pa. Code §61.10(b). Nevertheless, the regulation does not change the result in this case. The plain language of section 1008.6(2) refers to overt action directed to the insurer or its agent. PPB's notice to Progressive, on behalf of Hart, to cancel the policy was certainly such action. Section 1008.6(2) does not purport to control matters between the insured and his agent.

granted it under the premium finance agreement and therefore, PPB's actions are deemed to be Hart's. In actuality, it was Hart rather than Progressive who initiated the cancellation. For this reason, statutory notice provisions relating to cancellation by an insurer are not applicable. There being no genuine issue as to any material fact, summary judgment must be granted in favor of Progressive.

Accordingly, we enter the following

## ORDER

And now, June 5, 1990, for the reasons set forth in the attached opinion, this court declares that the insurance policy issued to defendant Deborah Hart by defendant Progressive was effectively canceled on February 16, 1984 and therefore judgment is entered in favor of defendant Progressive Casualty Insurance Company and against plaintiff Donegal Mutual Insurance Company.